62   177
a64   795

LAVINIA WESCOAT

*v.*

JOHN R. WILSON et al.

[Filed August 26th, 1901.]

Upon the facts shown in this case—*Held*, that the complainant is
equitably estopped from insisting that she has any interest in the land of
which she asks a partition.

On bill for partition.

In 1874 there was a tract of land in Atlantic City, Atlantic
county, in this state, consisting of ninety-five acres, the title to
which had been in Ryan Adams and Joseph D. Showell as
tenants in common.   By force of certain conveyances, upon the
death of Ryan Adams the title to a one-half interest in this tract
came to his wife, Judith, for life, with remainder to his son
Josiah Adams, his daughter Lavinia Showell (*nee* Adams), his
grandson John, child of his deceased son John, and his grandson
Daniel, son of his deceased son Daniel Ryan Adams.   Thus in

12

1874 Joseph D. Showell held a one-half interest in the tract and Ryan Adams' son Josiah a one-eighth interest, his daughter Lavinia, who was the wife of Joseph D. Showell, a one-eighth interest; his grandson John a one-eighth interest, and his grandson Daniel a one-eighth interest.

At the term of the Atlantic county orphans court, held September, 1874, Josiah Adams presented a petition for a partition of the said tract among himself and Lavinia Showell, John and Daniel Adams. Commissioners were appointed who made a report setting off four parcels of the said tract to each of the said four persons. Joseph D. Showell was not made a party to this proceeding. There was no part of the tract set off to him in the report and a large portion was left unmentioned lying to the east of a line, which line I have no doubt was intended to divide the whole tract into two parts of equal value. This line ran north and south. The part of the entire tract lying west of this line was set off into four lots marked upon the map of the commissioners as lots A, B, C and D. Lot A was set off to Lavinia, the wife of Joseph D. Showell; it lay along the whole length of the division line already mentioned between it and another line drawn parallel with it. The other three lots set off were all to the west, between successive lines drawn across the tract from north to south parallel with the main division line.

The complainant now seeks to have a partition of that portion of the land unmentioned in the former partition proceedings. The complainant is a grantee of Lavinia under a deed made by Lavinia, dated May 7th, 1894, after the death of her husband in September, 1893. Lavinia died July 13th, after making this deed of May 7th, 1894. Lavinia originally had, as I have already observed, a one-eighth interest in the entire tract. If her interest in the easterly half of the tract was unaffected by the partition of 1874, she would still have had a one-eighth, and her grantees of course have her one-eighth interest in the locus in quo. They claim, however, that they are entitled to a one-half interest, the remaining three-eighths interest having become vested in Lavinia by certain quit-claim deeds executed in 1887.

Wescoat v. Wilson.

The history of the quit-claim deeds is as follows: In 1887 Frank R. Walton bargained with Joseph D. Showell for the pur-chase of a lot of Joseph D. Showell's which was located on that portion of the original tract unmentioned in the report of the commissioners. Walton's attorney, while searching the title, discovered the fact that Showell had not been made a party to the partition proceedings of 1874, and that this part had not been set off to him in the report. Before passing the title he insisted that the interest of the other tenants in common should be quit-claimed. This was done by quit-claim deeds from these tenants, to whom lots A, B and C had been set off, they together owning a three-eighths interest. The deed was made to Joseph D. Showell and his wife, Lavinia. Joseph D. Showell and Lavinia Showell then owned the entire title, she having already a one-eighth and he a half interest. The quit-claim deeds conveyed the remaining three-eighths interest, and they together were entitled to the en-tire interest in the tract sold to Walton.

At the time these quit-claim deeds were given to Joseph D. and Lavinia, cross deeds were made to the quit-claimers by Joseph D. Showell and his wife of all interest which they might have in lots B, C and D. The quit-claim deeds were dated November 2d, 1887.

The interest of Joseph D. Showell was passed under his will to his sons John and Jeremiah. John sold his interest to John R. Wilson, defendant, and Jeremiah sold his interest to Sweeney and Doughty, defendants.

The complainant and those in interest with her claim as owners of Lavinia's interest in the land lying east of the division line already mentioned.

Under these conditions the defendants, in their answer, deny that the complainant has any title to the *locus in quo* (1) be-cause of a possession in her and her predecessors in title for twenty years; (2) because the complainant is equitably estopped from claiming any interest in this tract, by reason of her ac-quiescence in the result of the partition of 1874, and (3) that the effect of the quit-claim deeds heretofore mentioned stripped the present complainant of all title in the *locus in quo*.

*Mr. William M. Clevenger* and *Mr. Mark R. Sooy,* for the complainant.

*Messrs. Godfrey & Godfrey* and *Mr. David J. Pancoast,* for the defendants Somers L. Doughty and Edward M. Sweeney.

*Messrs. Thompson & Cole,* for the defendants John R. Wilson, Isabella L. Thompson, Joseph Thompson, John Showell and Jeremiah Showell.

REED, V. C.

The single equitable defence set up is that the complainant is equitably estopped from insisting that she has any interest in the land which she asks to have partitioned. The other defences interposed are purely legal.

The equitable defence is that by reason of the conduct of those who owned the land, a part of which is sought to be partitioned, the complainant is precluded from asserting that Joshua B. Showell, at the time of his death, did not own the *locus in quo* by a title in severalty.

The existence of the partition proceedings taken in 1874 and 1875 are relied upon to give color to this conduct. It is undoubtedly true that those proceedings in themselves did not affect the interest of Joshua D. Showell. He was not named in the application for the partition nor in the report of the commissioners nor in the order of the court. Nor is it clear that the publication of the statutory notice came to his knowledge so as to apprise him of the land which the applicants desire to have partitioned. The error of those who initiated the partition proceedings consisted in a failure to set out that the Ryan heirs each owned a one-eighth interest in the entire tract. In the application the land to be partitioned was mentioned as Ryan's—he in fact having owned only a one-half interest—and it was stated that each of the Ryan heirs had a one-fourth interest, as in fact they had in the Ryan one-half interest. It did not appear on the face of the partition proceedings what the real interest of the Ryan heirs was in the property. The commissioners, however, proceeded to set off to each of the Ryan heirs a portion in sev-

eralty. They first divided the entire tract into two portions for the purpose of giving Joshua D. Showell one-half of it in severalty, and the other half was regarded as belonging entirely to the Ryan heirs. They then proceeded to divide the last portion into four tracts, one of each was assigned to each of the Ryan heirs. Inasmuch as Joshua D. Showell was not bound by the result of the judicial proceeding, so, for want of mutuality, the Ryan heirs were not estopped from asserting their former interest in the land.

Although, as already remarked, this proceeding was ineffectual to affect Joshua D. Showell's interest in the land, nevertheless it, by subsequent recognition by all the parties, became the equivalent of a parol partition. From 1875 to 1887 there seems to have been no question raised as to the character of the title held by each of the Ryan heirs and by Joshua D. Showell by force of this proceeding. It was assumed that each held in severalty. There was no actual occupancy by the respective parties of the respective portion by metes and bounds, for the land was of a character not calling for personal occupancy. The assertion of an ownership in severalty, however, was manifested by conveyances made by Joshua D. Showell in conjunction with his wife, Lavinia, one of the Ryan heirs, and by two of the other Ryan heirs. Joshua D. Showell and Lavinia, on January 28th, 1878, conveyed a part of the tract set off to Joshua D. Showell to Benizet Irons and others, trustees of a church. This deed purported to convey and warrant a complete title to the portion so sold. Joshua Adams, one of the Ryan heirs, to whom lot D had been set off, sold this lot to Lewis Reed by a deed dated January 13th, 1875. This deed refers to the partition proceedings and purports to convey and warrant a complete title. John R. Adams, another of the Ryan heirs, on August 19th, 1881, conveyed a lot, being a portion of the land set off to him, to John Ferrat. He also conveyed on April 3d, 1882, another lot from the same portion to James C. Bowen, and on October 30th, 1882, still another lot from the same portion to Harriet L. Noble. He conveyed the remaining portion of this part to Thomas K. Reed and Mittee Gardner on April 21st, 1883. All these deeds

refer to the partition proceedings, and purport to convey a complete interest in the land sold.

Daniel Adams, the remaining Ryan heir, to whom lot C had been apportioned, died in about ten months after the partition proceedings terminated, leaving as his heirs Lavinia, wife of Joshua D. Showell, and Joshua A. and John Adams.

It was insisted at the hearing that these acts of the Ryan heirs were irrelevant. The Ryan heirs were, however, the predecessors in title of the complainant, in respect of a three-eighths interest in the land in question, alleged to arise from the quit-claim deed made in 1887. Their acts are also relevant as done through the influences of Showell's acts and so creating an estoppel, to be presently discussed. As I have remarked, from 1875 to 1887, it was assumed by all the parties that the effect of the partition proceedings was to confer upon the Ryan heirs a title to the portion set off to them in severalty, and to leave Joshua D. Showell, in the one-half left to him, also a title in severalty. In 1887 the quit-claim deeds were executed.

Joshua D. Showell and wife had entered into an agreement to sell a portion of the land left to Joshua D. Showell to Frank R. Walton. Judge Thompson, the attorney of Mr. Walton, on examining the partition proceedings discovered that Joshua D. Showell was not a party. To set at rest any doubt in respect to Showell's title, he insisted upon quit-claim deeds from all others who might have an interest in the property, in case the partition proceedings were inoperative. So, as already observed, a quit-claim deed was signed by Sarah B. Adams, widow and devisee of Joshua Adams, and by John R. Adams, quit-claiming their interest in lot A and their interest in Joshua D. Showell's half. This left the title of lot A and in Joshua D. Showell's portion in Joshua D. and Lavinia. At the same time Joshua D. and Lavinia made deeds quit-claiming their interest in lots B, C, and D to Sarah Adams and John R. Adams in one deed. At the same time they also quit-claimed their interest in lots B and D to Thomas K. Reed, he then being their owner. These quit-claim deeds were signed manifestly, not because the parties to them had supposed, or even then thought, that they had any interest to release. Joshua D. Showell and Lavinia, when asked

to make the quit-claim deeds, insisted, says Judge Thompson, that the Ryan heirs had no interest in the land which they had agreed to sell to Walton. All the parties signed the quit-claim deeds as an act of civility which would set at rest any doubt as to Joshua D. Showell's title and enable him to sell his land, while not affecting any interest which they had suspected themselves to possess. Indeed the execution of these deeds was in itself confirmatory of the partition which had been made and assented to.

After the execution of these quit-claim deeds the only question left was in respect to the quality of the ownership to lot A, which had been set off to Lavinia, and the one-half left to Joshua D. Showell. The insistence by both husband and wife, when the quit-claim deeds were made, that no one other than themselves had an interest in the portion proposed to be sold, involved the proposition that Lavinia held lot A and Joshua D. his portion in severalty. If the interest of the other Ryan heirs in this land had been discharged, it must have been by operation of the partition proceeding, and the assertion of the husband and wife must have been based upon their so understanding the effect of that proceeding. If, however, that proceeding was operative to shift the undivided interest which the other Ryan heirs had held in the Showell portion to a several title to each portion set off, it followed that it also shifted Lavinia's interest to a several title in lot A. Every act of the husband and wife which recognized the ownership in severalty of any of the Ryan heirs, asserted the same ownership of Lavinia to lot A and so left Joshua D. the owner in severalty of the remainder.

But, treating these recognitions of the binding quality of the partition proceeding as equivalent to a parol partition, nevertheless they would not change the undivided interest in the entire tract into interests in severalty in the apportioned tract. A parol partition encounters the provisions of the statute of frauds. It was so held in the case of *Den, ex dem. Woodhull & Longstreet, 3 Harr. 405,* followed by *Lloyd* v. *Conover, 1 Dutch. 47,* and *Den, ex dem. Richman,* v. *Baldwin, 1 Zab. 395.*

Nor will mere possession by each co-tenant of the part set off to him, short of twenty years, establish a parol partition. It

was, however, admitted in *Den, ex dem. Richmond,* v. *Baldwin, supra,* that co-tenants may be estopped by their acts from asserting that there was no partition, although there is no technical estoppel by record or any written conveyance.

The question of estoppel *in pais,* in connection with a parol partition, received an exhaustive discussion in the federal circuit court of appeals, in the case of *Berry* v. *Seawall, 65 Fed. Rep. 742.* In that case one of the co-tenants conveyed the portion set off to her in severalty by a deed with general warranty title. Another branch of the co-tenants sold nearly all of their portion with covenant of general warranty. Judge Taft, speaking of the co-tenant who set up the invalidity of this partition (admittedly unprovable by the statute of frauds), said that she had shown by her conduct that she did not intend to claim any interest in the share of land assigned in the partition to her co-tenants; and she made this representation irrevocable by taking to her exclusive benefit the grant assigned to her and selling it in its entirety to another. Relying on her consent to the partition and her active participation in appropriating its fruit, her co-tenants made themselves liable under covenants of general warranty to their grantees, and for thirteen years there was nothing said or done to disturb the confidence her co-tenants had justly reposed in the permanency of the partition.

The court held that the question of estoppel should have been left to the jury upon these facts. In that case it is true that possession was taken by the co-tenants of the assigned parts. In this case there is no proof of such possession, but the assertion of a right in severalty, and to the right of an exclusive possession against all co-tenants, could not have been stronger than by the deeds executed by them. Said Mr. Justice Depue, in *Foulks* v. *Bond, 12 Vr. 527, 540:* "The conveyance by one tenant of the estate in entirety is decisive of his purpose to appropriate the entire estate to his own use, especially if his deed contained covenants of warranty and seizin." These deeds, however, were not merely the assertion of exclusive possession, not mere recognition of the potency of the partition proceeding, but their execution created an estoppel *in pais.* The estoppel arises upon the principle stated by Judge Taft, that the assertion of ownership in

severalty induced the other co-tenants to bind themselves by a general warranty of a title in severalty in themselves.

After the execution of the quit-claim deed by which all the interest in lot A and in Joshua D. Showell's portion was lodged in Joshua D. and Lavinia, the former asserted a title in severalty to his portion. On February 18th, 1892, he made, in his name, a lease to the Atlantic City Railroad Company, granting them a right of way over his land. On December 3d, 1892, he made a lease to Winfield Lauermaster. In this lease an option was given to the lessee to purchase the land leased. Lavinia joined in executing neither of these papers.

The evidence is undenied that during the later years of Joshua's life his business affairs, on account of his invalidism, were administered by Lavinia. Without doubt these papers were executed not only with her knowledge and consent, but through her active negotiation.

Now it is to be observed that the only reason why Lavinia was not estopped by the partition proceeding to which she was a party, is because Joshua was not estopped, and so the estoppels were not mutual. It may be that he, by his recognition of the validity of this proceeding, supplied that mutuality.

But regardless of this view, she, by encouraging and countenancing his contract to make a sale of a portion of the property estopped herself from setting up that he had not the title which he thus bound himself to convey. Reciprocally her husband had no interest in lot A which she held in severalty. Her heirs so treated this lot, and after her death had it partitioned as property held by Lavinia in severalty by force of the partition proceeding of 1874 and 1875. Nor do I think the estoppel fails because of the coverture of Lavinia. The general rule undoubtedly is that a married woman can estop herself *in pais* in respect of a matter about which she can contract. Husbands and wives, coparceners at common law, who agreed to a partition which was fair, were bound by the apportionment, and so were their heirs. This was held to be so because a married woman was compellable at common law to make partition. *Freem. Co-ten. & P.* § *412.* Upon this ground, in *Berry* v. *Seawall, supra,* it was held that a

married woman could preclude herself from questioning a parol partition by conduct amounting to an estoppel *in pais.*

I am constrained to the conclusion, therefore, that the bill should be dismissed for the reasons stated.