*9
 
 Day, J.
 

 The title to the real estate, part of which is involved in this controversy, was before this court for consideration at an earlier date, and is found in the case of
 
 Job E. Stevenson
 
 v.
 
 Minerva C. Evans et al.,
 
 10 Ohio St., 307, wherein it is held:
 

 “1. That the words ‘or to the children or child lawfully begotten of the body of such child or children’ [in the will of John Evans] were intended to designate persons who might be living at the death of the tenants for life, and not as words of limitation, requiring a succession first to children and then to children of the children. 2. That the words did not render the devise over, after the determination of the life estate, void for uncertainty, or repugnancy, but that the meaning of the testator was, that upon the death of the tenant for life the children then living were to take, and if any child of the tenant for life had predeceased, leaving a child or children, such child or children should be substituted to the place of the deceased parent.”
 

 The gist of which holding was that the first takers, Mary Ann Boggs, Minerva C. Evans, and the grandsons Edward 0. Stevenson, Sr., and Job E. Stevenson, took life estates only.
 

 The questions involved in the case at bar were not considered therein, and reference to it is interesting in a historical sense rather than otherwise.
 

 The paramount question in this case is whether or not Eva C. S. Cable has ratified the partition of 1857 and cannot now be heard to take advantage of the fact that she was not made a party to that proceeding.
 

 
 *10
 
 While it is true that all persons holding an interest in land to be partitioned under the statute should be made parties, and such proceedings are defective if any are omitted, it, however, by no means follows that such persons may not by acts, conduct, and declaration ratify such defective proceedings. The common pleas court denied partition upon the ground of ratification, and the Court of Appeals affirmed that conclusion.
 

 While plaintiff in error contends there can be no estoppel
 
 in pais,
 
 or equitable estoppel, because the conduct of Eva C. S. Cable, did not deceive or mislead any persons to their detriment, yet the owners of the remaining part might well have considered her conduct in selling and mortgaging her interests in portions of the land which had been set apart in the partition of 1857 as an acceptance by her of the benefits of such partition, and have considered that plaintiff did not recognize any undivided interest that they, the defendants in error, might still have in such lands; in other words, that she treated the portion set off to Job Stevenson as property in severalty, of which she had complete doüiinion in so far as her estate extended.
 

 If, relying upon such conduct upon plaintiff’s part, the owners of the Edward Stevenson, Jr., interest proceeded to sell and incumber their portion of the lands so set off in 1857, conveying the same to third parties, it might well be claimed that plaintiff’s course of conduct had misled the owners of the Edward Stevenson, Jr., share to their detriment, in the event a new partition should be ordered.
 

 
 *11
 
 The facts going to make up estoppel
 
 in pais,
 
 or equitable estoppel, are so varied that each case must rest upon its particular circumstances.
 

 The following are some of the cases in which the doctrine has been invoked:
 

 In the case of
 
 Berry
 
 v.
 
 Seawall,
 
 65 F., 742, 13 C. C. A., 101, it was held:
 

 “In Ohio, parol partition, consummated by possession and acquiescence under it for any less period than that which creates the bar of the statute of limitations, does not vest the legal title in severalty to the allotted shares; but such a partition, acquiesced in for any considerable length of time, will estop any person joining in it and accepting exclusive possession under it from asserting title or right to possession in violation of its terms.”
 

 The record in that ease discloses that Margaret Ann Sinclair, a granddaughter of William Greene Munford, inherited one-third of his estate, which included surveys in the Virginia military district in Ohio. In a parol partition, concluded by her husband with the other heirs, she received certain surveys in Fayette county, and released claim of interest in the other land of her ancestor. She died in 1837. Her husband died in 1875. Meanwhile the lands received by other heirs in the partition passed into other hands. Mrs. Sinclair’s heirs assigned their supposed rights in these lands to Seawall, who brought ejectment actions to recover possession. Taft, Justice, in an opinion concurred in by Lurton and Barr, Justices, held that the actions were precluded by Mrs. Sinclair’s ratification of
 
 *12
 
 her husband’s partition. It is said on page 754 of the opinion (13 C. C. A., 113):
 

 “Parol partition, followed by long possession, furnishes frequent occasion for the proper application of the principles of estoppel
 
 in pais.
 
 The consent to a partition is necessarily the plainest invitation to all concerned to treat the share assigned as the several property of the respective allottees; and sales of the same by the respective allottees under general warranty, and the investment of labor and money in substantial improvements, are the usual result, and create all the necessary elements, of the estoppel.”
 

 The case of
 
 Berry
 
 v.
 
 Seawall, supra,
 
 was followed with approval in
 
 Wescoat
 
 v.
 
 Wilson,
 
 62 N. J. Eq., 177, 49 A., 1112. In this case one of the tenants in common owner of an undivided one-half, was not made a party to a partition proceeding, although the heirs of his cotenant received at the hands of the commissioners four lots in severalty, carved out of one-half the estate. Some years after, the cotenant, seized of the undivided one-half interest, sought to sell a portion of the remaining one-half not aparted; his cotenants in the meantime having sold by general warranty deed portions of the land set apart to them in severalty.
 

 Vice Chancellor Reed in his decision says, at page 184 (49 A., 1115):
 

 “In this case there is no proof of such possession, but the assertion of a right in severalty, and to the right of an exclusive possession against all cotenants, could not have been stronger than by the deeds executed by them. Said Mr. Justice Depue, in
 
 Foulke
 
 v.
 
 Bond,
 
 12 Vr., [41 N. J. Law,]
 
 *13
 
 527, 540: ‘The conveyance by one tenant of the estate in entirety is decisive of his purpose to appropriate the entire estate to his own use, especially if his deed contained covenants of warranty and seizin. ’ These deeds, however, were not merely the assertion of exclusive possession, not mere recognition of the potency of the partition proceeding, but their execution created an estoppel
 
 in pais.
 
 The estoppel arises upon the principle stated by Judge Taft, that the assertion of ownership in severalty induced the other cotenants to bind themselves by a general warranty of a title in severalty in themselves.”
 

 Berry
 
 v.
 
 Seawall, supra,
 
 is founded upon the principle announced in
 
 Dickerson
 
 v.
 
 Colgrove,
 
 100 U. S., 578, 25 L. Ed., 618. Mr. Justice Swayne, delivering the opinion of the court, on page 580 says:
 

 “The estoppel here relied upon is known as an equitable estoppel, or estoppel
 
 in pais.
 
 The law upon the subject is well settled. The vital principiéis that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by' disappointing the expectations upon which he acted.”
 

 Mr. Freeman, in his work on Cotenancy and Partition, in the text, at' page 710, Section 535, announces the doctrine:
 

 “Hence a cotenant, who, though not a party to the partition, accepts the partition allotted to him, and holds and conveys the same in severalty, will not be subsequently permitted to avoid the partition.”
 

 
 *14
 
 The author cites
 
 Millican
 
 v.
 
 Millican,
 
 24 Tex., 426, the syllabus of which holds:
 

 “If one who was not a party to the partition accept the portion allotted to him, and afterwards convey it by deed, referring to the partition as his source of title, he will be concluded as respects the property embraced in the partition.”
 

 The mortgage of Eva C. S. Cable and her husband in 1908 referred specifically to the partition of 1857.
 

 The following are cases under various sets of circumstances, in which the principles of estoppel
 
 in pais,
 
 or equitable estoppel, and of ratification of irregular or defective partition proceedings by a party accepting benefits therefrom, have been recognized.
 
 Jackson
 
 v.
 
 Richtmyer,
 
 13 Johns. (N. Y.), 367;
 
 Clark
 
 v.
 
 Charles,
 
 55 Neb., 202, 75 N. W., 563;
 
 Staats
 
 v.
 
 Wilson,
 
 76 Neb., 204, 107 N. W., 230, 109 N. W., 379, 124 Am. St. Rep., 806;
 
 Dawkins
 
 v.
 
 Dawkins,
 
 104 N. C., 301, 10 S. E., 307;
 
 Perrine
 
 v.
 
 Kohr,
 
 20 Pa. Super. Ct., 36;
 
 Jones
 
 v.
 
 Park
 
 (Mo. Sup.), 271 S. W., 370;
 
 Farmer
 
 v.
 
 Gipson,
 
 201 Ky., 477, 257 S. W., 1.
 

 Of course, in technical estoppel, the party to be estopped must knowingly have acted so as to mislead his adversary, and the adversary must have placed reliance on the action and acted as he would otherwise not have done. Some authorities, however, hold that what is tantamount to estoppel may arise without this reliance on the part of the adversary, and this is called ratification, or election by acceptance of benefits, which arises when a party, knowing that he is not bound by a defective proceeding, and is free to repudiate it if he will,
 
 *15
 
 upon knowledge, and while under no disability, chooses to adopt such defective proceeding as his own. Such conduct amounts to a ratification. Estoppel proceeds on the theory that the party’s conduct has induced his adversary to take certain action on the faith of it, and that it would work injury to his adversary if the party were not compelled to be bound by such conduct. This element of knowledge and reliance upon the part of the adversary may not be present in ratification. Ratification means that one under no disability voluntarily adopts and gives sanction to some unauthorized act or defective proceeding, which without his sanction would not be binding on him. It is this voluntary choice, knowingly made, which, amounts to a ratification of what was theretofore unauthorized, and becomes the authorized act of the party so making the ratification.
 

 This distinction is commented upon by Lamm, J., in
 
 Hector
 
 v.
 
 Mann,
 
 225 Mo., 228, where, on page 245 of the opinion, 124 S. W., 1109, 1115, it is said:
 

 “But it is argued that in order to operate as an. estoppel the purchaser should have known and relied upon the receipt of the purchase money and changed his situation to his disadvantage because of such reliance. I cannot agree such argument is sound. There are estoppel and estoppels and some forms of them are so defined by law-writers and jurists as to make one element in the estoppel the knowledge and reliance of one party upon the acts and conduct of the other—for instance, estoppel
 
 in pais,
 
 arising from misrepresentation by word, act, conduct or silence. But there are other forms of estoppel in which knowledge of the:
 
 *16
 
 fact upon the part of the person invoking the estoppel, and reliance upon the fact and a change of situation based upon that reliance, is not an element. It may be that ‘estoppel,’ speaking with precision, is the wrong designation and that in attempting to classify and give names the doctrine we are about to invoke is improperly classified as ‘estoppel’ and that it does not come under that head but springs from election, ratification, affirmance, acquiescence, acceptance of benefits or what not. It is classed, however, by law-writers under the head of ‘quasi estoppel.’ Bigelow on Estoppel (5th Ed.), p. 693; 16 Cyc., pp. 787, 784
 
 et seq.
 

 “Says Bigelow: ‘Many of the cases upon this subject, it will be noticed, are simply cases of ratification or acquiescence; and it is a questionable use of terms, as we have seen, to apply the word “estoppel” to them. A few more cases will serve to enforce this observation. Thus, if heirs of age join in a deed of quitclaim with a trustee of the ancestor’s real estate, to complete title made by a previous deed executed by the trustee, it is said that they will thereafter be “estopped” from contesting the validity of that earlier deed. So if a man assent with knowledge of the facts to the appropriation by an officer of the law of moneys arising from a judicial sale, he will be estopped thereafter from objecting.’
 

 “The same careful writer says (page 684), under the head of ‘Quasi Estoppel: Election’ and a subhead, ‘Inconsistent Positions’: ‘Thus, a party actively affirming a transaction such as a contract or a purchase, by receiving and retaining money upon it, is estopped thereafter to deny the force of any of its express or implied terms or con
 
 *17
 
 ditions.’ He suggests there is no great objection to the use of the term ‘estoppel’ in such cases if used as a synonym with ‘bar’ or ‘preclusion.’ Page 694.”
 

 See, also, 21 Corpus Juris, p. 1115, Section 117. This doctrine of ratification, as announced in
 
 Hector
 
 v.
 
 Mann, supra,
 
 has been followed in Missouri in the following cases:
 
 Mengel
 
 v.
 
 Leach,
 
 (Mo. Sup.), 226 S. W., 883, 884;
 
 Headlee
 
 v.
 
 Cain,
 
 (Mo. App.), 250 S. W., 611;
 
 Walker
 
 v.
 
 Hassler,
 
 (Mo. App.), 240 S. W., 257-259;
 
 Lawson
 
 v.
 
 Cunningham,
 
 275 Mo., 128-150, 204 S. W., 1100;
 
 Milan Bank
 
 v.
 
 Richmond,
 
 280 Mo., 30-40, 217 S. W., 74, 9 A. L. R., 353.
 

 The record discloses that Eva C. S. Cable accepted the benefits of the partition of 1857 to the extent of conveying in severalty the 32-acre tract to Bennett in 1875, after she became of age and chargeable with knowledge of what the record contained, executing a warranty deed, with full covenants of seizin, and with a consideration passing -to herself and her father, as grantors, in the sum of $1,916.25. This land was a portion of the lands set apart, by the partition proceedings of 1857, to her father for life, which, in the event she survived him, came to her in fee.
 

 Again in 1908 she mortgaged her interest, to wit, an undivided one-third, subject to her father’s life estate, in another portion of the lands aparted in the 1857 partition suit. Thus it is seen she exercised dominion over the lands thus aparted in the ancient partition proceeding, in so far as she was seized of an estate of severalty therein, and this for a purpose valuable to herself, to wit, the
 
 *18
 
 raising of money thereon. The mortgage of 1908, in the description of the land conveyed, referred specifically to the Ross county partition proceeding of 1857, in which she was not made a party, and upon which defect she bases her rights in this case, thus fixing absolutely and conclusively knowledge on her part of what took place in such proceeding.
 

 By accepting these benefits we think that she ratified and confirmed such partition, even though she was not made a party to the suit originally, and that her actions in so doing could be properly construed by the coparceners as a recognition by her of her interest in severalty therein, subject, of course, to her father’s and sisters’ rights. If her cousin, Edward Stevenson, Jr., knowing and relying on her conduct, conveyed and mortgaged portions of the land set apart to him in the partition of 1857, it cannot be said that her actions did not prejudice him and those claiming under him. If Edward Stevenson, by the record, learned that she was treating the Job E. Stevenson share of the partition as property owned in severalty, and was incumbering and conveying the same, was he not justified in assuming that she had accepted the partition of 1857, and had ratified the same?
 

 Clearly she could not ratify and affirm the partition in so far as it might be beneficial to her by conveying a part of the land set apart in severalty, and by mortgaging a portion of it for the purpose of raising money, and then, having accepted such benefits, be heard to disaffirm and avoid such partition in so far as the same might not be to her advantage. Such conduct on her part was clearly within the law of ratification and equitable
 
 *19
 
 estoppel. As was said in
 
 Farmer
 
 v.
 
 Gipson,
 
 201 Ky., 477, 257 S. W., 1:
 

 “Where one has, by a course of conduct, with a full knowledge of the facts with reference to a particular right or title, induced another, in reliance upon such course of conduct, to act to his detriment, he will not thereafter be permitted in equity to assume a position or assert a title inconsistent with such course of conduct, and if he does he will be estopped to thus take advantage of his own wrong.
 
 Louisville Sewerage Commissioners
 
 v.
 
 Gates,
 
 159 Ky., 391, 167 S. W., 417;
 
 I. C. R. R. Co.
 
 v.
 
 Doss,
 
 137 Ky., 659, 126 S. W., 349;
 
 York
 
 v.
 
 East Jellico Coal Co.,
 
 76 S. W., 532, 25 Ky. Law Rep., 927;
 
 Givens
 
 v.
 
 Providence Coal Co.,
 
 22 Ky. Law Rep., 1217, 60 S. W., 304, 21 C. J., 1202.”
 

 Eva C. S. Cable’s knowledge of what transpired in the partition of 1857 is evidenced by her reference thereto by way of description in the mortgage given by her and her husband in 1908.
 

 Much is said in the briefs of counsel concerning the admissibility of evidence of the Union county partition proceedings. The decree in that case aparted the lands of Minerva Evans that came from two sources: First, the lands set apart to her by the commissioners under the will of her father John Evans; second, the part of the Boggs land set apart to her by the first partition of 1857, to which Eva C. S. Cable was not a party.
 

 Eva C. S. Cable, her father, Job Stevenson, and her cousin, Edward Stevenson, Jr., got their shares of the Boggs land in the same proceeding. By the second partition proceeding of 1857, to which plaintiff was not a party, her father and her cousin, Ed
 
 *20
 
 ward Stevenson, aparted their shares of the Boggs land and also the land coming to them directly by the commissioners under the will of John Evans. This Union county partition continued to carry out the plan of partition and the location of lands followed in the two partition proceedings of 1857, and Eva C. S. Cable, by her answer, joined in the prayer for partition, as set forth in her father’s petition in the
 
 Union county case.
 
 She must thus be held to be chargeable with knowledge of what was done in the partitions of 1857, and with such knowledge she makes no claim for her undivided interest, subject to her father’s estate in the lands aparted in the 1857 partitions, some of which was the Boggs land, but simply asks that partition be granted as prayed for by her father. While the lands described in the petition herein are no part of the lands aparted in the Union county partition proceedings, and Eva C. S. Cable makes no claims therefor, but frankly admits she is bound by her answer, yet the nature of the case was such as to bring knowledge home to the plaintiff of what was done in the two ancient partitions, and, with such knowledge, in December of the same year she proceeds to convey part of the lands in Pickaway county, set apart to her father and herself in the second partition of 1857, and later to mortgage her interest in other lands aparted in the same defective partition proceeding.
 

 As bearing upon her knowledge and the question of ratification, we think the Court of Appeals committed no error in admitting proof of the Union county partition proceeding. The same was pleaded in the amended answer and admitted in the reply,
 
 *21
 
 and might be considered as bearing upon the question of her knowledge in the premises when she made her election and chose to ratify rather than disaffirm, at the time of conveying and mortgaging her interest in the lands aparted in the 1857 partition proceeding.
 

 Coming now to the question of conflict of opinion between the Court of Appeals of the Fourth district and the Court of Appeals of the Fifth district, a brief consideration of what was decided in the so-called
 
 Belle Garter case
 
 is necessary.
 

 That was a proceeding under the so-called Torrens Law, brought by Belle Carter, a purchaser of one of the tracts of the Edward Stevenson share, the purpose being to have the title registered, as provided in Section 8572-1
 
 et seq.,
 
 General Code. The answers filed therein set forth the ancient partitions and an averment of the fact that Eva C. S. Cable was not party thereto. A demurrer was filed by Belle Carter, which was overruled by the court of common pleas. Error was prosecuted to the Court of Appeals, the grounds of reversal urged being, first, that the doctrine of virtual representation applied to Eva C. S. Cable; second, that she had been guilty of laches; and, third, that the presumption was in favor of the regularity of such decree in partition, and that it could not be attacked in the manner set forth in the answers. The Court of Appeals denied all three of these grounds, and, we think, correctly so. The doctrine of virtual representation does not apply to the living. Eva C. S. Cable could not enter her estate until the death of the life tenant, hence could not be guilty of laches; and, the record showing her
 
 *22
 
 omission as a party to the 1857 proceeding, and no attempt to invoke the then existing statute, no presumption as to the regularity of the proceedings arose against her.
 

 The question of equitable estoppel or ratification was not made by the pleadings in that case, and is not considered in the opinion of the court, whereas, in the case at bar, the paramount, indeed, the only, question is that of equitable estoppel and ratification. The two courts were passing upon different propositions of law, and there is no conflict in the conclusion reached by the Court of Appeals in the present instance with the points of law decided in the
 
 Belle Carter case.
 

 We place our conclusions as to the ratification of the partition proceeding of 1857 upon the warranty deed to Bennett in 1875 and the mortgage to the Ohio Loan & Investment Company in 1908. Both of these instruments contained descriptions of portions of the lands set apart in severalty to Job E. Stevenson for life, of which, in the event she survived her. father, she and her sisters became owners in fee. When she adopted such course of conduct she was of full age and under no disability, and when, with the knowledge implied by the record, as well as with the actual knowledge shown by the description of the land conveyed in the mortgage, and, further, with the knowledge gained by her participation in the Union county partition proceeding, she saw fit to exercise dominion over the lands set apart in severalty to her side of the family by conveying portions of the same, and mortgaging parts thereof, she, by thus accepting the benefits of the partition, ratified the same.
 

 
 *23
 
 There is nothing in this record to show that either of the ancient partition proceedings was in any wise fraudulent, or in had faith, or that her father, of full age and under no disability, did not receive fair treatment at the hands of the court in apportioning the lands between him and his infant nephew, Edward Stevenson, Jr.
 

 We think that Eva C. S. Cable could not accept the benefits of these partitions without also assuming the obligations incident thereto. There could be no partial ratification.
 

 Entertaining the view that it would be inequitable to now permit the estate of Eva C. S. Cable, her legal representatives, her heirs at law, or those claiming with her, to now deny the sufficiency of the partition of 1857, our conclusion is that the judgment of the court below in denying partition was right, and that the same should be and hereby is affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias, Allen and Kinkade, JJ., concur.