**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
**File Name: 09a0754n.06**

**No. 08-4338**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 30, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| Bonner Farms, Ltd., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **ON APPEAL FROM THE UNITED** |
| v. | ) | **STATES DISTRICT COURT FOR** |
| | ) | **THE NORTHERN DISTRICT OF OHIO** |
| Thomas A. Fritz, Deborah D. Weise, | ) | |
| and Exco-North Coast Energy, Inc., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE:  KENNEDY, ROGERS, Circuit Judges, and HOOD[*], District Judge.

**CORNELIA G. KENNEDY, Circuit Judge.**  Defendants, the beneficiaries of a lease that allows them to extract oil and gas from four wells on the plaintiff's property, appeal the declaratory judgment that the lease had expired by its terms when defendants failed to continue production. Defendants do not challenge the jury's finding that all production had ceased by the end of 2004. Instead, they seek to avoid the conclusion that the lease expired raising two affirmative defenses: (1) the plaintiff is estopped from denying the continuation of the lease because the plaintiff accepted benefits under the lease when the defendants reinstated production in 2005; and (2) the plaintiff has unclean hands because it took gas from the defendants' pipeline without their consent.  The district court rejected these defenses.  The defendants assert on appeal that both defenses require judgment in their favor.  Because neither defense defeats the district court's judgment, we **AFFIRM**.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In 1970, James and Martha Leet entered into a lease (the "Leet Lease") with Pointer Oil Company, allowing access to their land for the purpose of drilling for and extracting gas and oil. The lease provides that it shall continue for ten years "and so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon, or operations are maintained on" the land. Under the lease, the landowner was entitled to a royalty in the amount of one-eighth (12.5%) of the value of the oil and gas removed from the premises less the expense related to its removal.

Eventually, plaintiff-appellee Bonner Farms obtained the land and the landowner's rights, and Power Gas (to which defendant-appellant Exco-North Coast energy is a successor in interest) assumed the extraction privileges. Defendants Thomas A. Fritz and Deborah D. Weise also have an interest in the lease that would terminate if the Leet Lease was no longer in effect, and they were therefore joined as defendants.

Four wells (known as Jones #1, Jones #2, Jones #3, and Jones #8, collectively the "Bonner wells") were placed on the 155 acres now owned by the plaintiff, and gas was extracted by Power Gas pursuant to the 1970 lease. The Pochedly Pipeline System, owned by Power Gas, gathers resources from plaintiff's wells and several others for its pipeline system. Pursuant to the plaintiff's request, at some point Power Gas removed all flow lines, which had not been operating, from the Jones #2 and #3 wells.

This much was, and is, undisputed. The plaintiff believed that productive use of all wells and operations had ceased by the end of 2004, so it attempted to clarify the expiration of the lease by filing an affidavit with the county recorder. *See* Ohio Rev. Code § 5301.332. Power Gas contested the affidavit, contending that the lease remains in full effect, causing the plaintiff to commence the

2

present declaratory judgment action in the Portage County, Ohio Court of Common Pleas, seeking a declaration that the lease had expired.

The case was removed to federal court on the basis of diversity of citizenship,[1] and the parties agree that Ohio law provides the substantive rule of decision. After extensive proceedings not relevant to this appeal, a jury was asked to return a special verdict containing interrogatories on factual disputes. Through a special verdict form, the jury found "by a preponderance of the evidence that defendant Power Gas Marketing & Transmission, Inc. stopped producing oil or gas in paying quantities" from all four Bonner wells, and that Power Gas had stopped maintaining operations on the property subject to the lease. There is no challenge to the jury's findings on these issues.

The defendants seek to avoid a finding that the lease had expired through two affirmative defenses: quasi-estoppel and unclean hands. In support of their quasi-estoppel argument, the defendants contend that the plaintiff is estopped from denying the continuing vitality of the lease because after the commencement of this litigation the wells were again actively pumped and the plaintiff had accepted payments each equal to 12.5% of the value of oil and gas produced from the Bonner wells in the preceding interval, the property owner's share under the lease. The parties stipulate that there were twenty-one Power Gas checks deposited by the plaintiff in that period,

---

[1]The parties agree that jurisdiction is proper in this court. The parties stipulate that Plaintiff Bonner Farms is "an Ohio limited liability company." In order to proceed based on diversity of citizenship, no defendant can be a citizen of Ohio. Defendant Power Gas is a Delaware corporation with a principal place of business in Pennsylvania. Although Thomas A. Fritz and Deborah D. Weise are named as Defendants, there are no allegations or other facts showing their citizenship. *See* Fed. R. Civ. P. 8(a)(1) (requiring that the complaint contain allegations establishing the court's jurisdiction). Nevertheless, Fritz and Weise were served in states outside of Ohio, and counsel for both sides agreed at oral argument that they are not citizens of Ohio.

although the parties do not agree on the dates the checks were negotiated. All checks were dated after August 2005.

At trial, the defendants emphasized that the checks were accompanied by a letter dated August 11, 2005, indicating that the checks were made in accordance with the terms of the lease:

> It was recent [sic] brought to my attention that your accounts relative to the wells known as Jones #1, 2/3, 7, 8, 11 and Gould #1 had been suspended in error. Therefore, I am enclosing two checks (162006 for $1,981.25, 162008 for $2,231.47) to bring your account up to date, along with a complete statement of said accounts.

Attached to the letter was a statement computing 12.5% of various transactions. The defendants elicited testimony from the plaintiff's owner, Richard Bonner, on cross-examination regarding this letter:

> Q. What this letter does, Mr. Bonner, is explain to you that your account had been suspended in error by Power Gas, and the enclosed checks were being sent to you because they had some past due royalties that they had not paid because of that error. Isn't that true?
> A. I think it's a coverup, I really do. Excuse me. I don't know what it means. It's legal stuff.
> Q. That's what the letter says though; right, sir?
> A. If you say so.
> Q. And those checks were royalty checks; right, sir?
> A. Yes.
> MR. KELLER: Objection. We stipulated he received checks, he cashed them. The characterization of those checks is a question that depends on whether the lease is still in effect or not.
> THE COURT: Yes, it does.
> MR. MENDOZA: Your honor, I asked the question because the stipulations only go so far.
> THE COURT: That's true. Okay. Let's move on.

Plaintiff's counsel had sent a letter dated December 16, 2004 to defendants' counsel, stating the plaintiff's position:

> As you understand, the lease(s) underlying the wells on the Bonner and Burrows property subject to this action have expired and/or been otherwise

4

terminated. We understand that your client is removing and selling oil and gas from some of these wells and is sending our clients a royalty of 1/8th. We understand that your client currently disagrees with our position and intends to continue operating these wells until the resolution of this action in spite of our objections.

The purpose of this letter is to demand that your client account for and pay our clients the other 87.5% of the oil and gas removed from their property. Since our clients are entitled to all the proceeds, they will negotiate any checks they receive from your client, without any waiver, ratification or agreement that the lease(s) are valid, and with full reservation of all their rights.

Through interrogatory number three, the jury declined to find "by a preponderance of the evidence that plaintiff Bonner Farms, Ltd. accepted royalty payments under the provisions of the Leet Lease from defendant Power Gas Marketing & Transmission, Inc." in any year.

The defendants also argued that the plaintiff was barred from recovery due to its "unclean hands," citing evidence that the plaintiff took gas from the Pochedly System to use for its seven-million-BTU grain dryer without consent. The parties stipulated as follows:

14. At some point in time in the past, Bonner tapped into the Pochedly System to obtain gas for its grain dryer.
15. At some point in time in the past, Power Gas disconnected Bonner's line to the grain dryer from the Pochedly System.
16. At some point in time in the past, Bonner re-connected a line into the Pochedly System to obtain gas for its grain dryer

Bonner claimed that he received permission from Equity Gas, which owned the Pochedly System at the time, but such permission was ineffective because the line was operated by Power Gas, which had the exclusive right to grant such permission. Mr. Bonner initially agreed to pay for at least some of the gas that was taken; however, when he received an invoice from Power Gas, he refused to pay at the rate demanded, and instead paid at a lower rate. At trial, Robert Crissinger, district manager for North Coast Energy, which operates Power Gas, testified that he believed the plaintiff's illicit use of gas to be a "serious contributing factor" as to why Power Gas's records showed no production,

5

although the basis for this conclusion is not apparent from the record. Another defense witness, John Firko, drilling supervisor for North Coast Energy, testified that "sales of gas was impeded as a result of significant leaks" throughout the Pochedly System. The jury found "by a preponderance of the evidence that plaintiff Bonner Farms, Ltd. took gas from the Pochedly Pipeline System without the consent of defendant Power Gas," on September 1, 2004. The jury was not asked to decide whether this conduct was related to the issue of whether the lease was effective.

The district court entered a declaratory judgment that the lease had expired by its own terms as of December 31, 2004. The court relied on the jury's answer to interrogatory number three, writing: "This was a limited finding. The Court does not have a factual finding from the jury upon which to conclude whether Bonner accepted benefits from Power Gas within the law of quasi-estoppel under Ohio law."

The court also rejected the defendants' argument of unclean hands. Acknowledging the jury's finding that the plaintiff took gas from the Pochedly Pipeline System without consent, the district court nevertheless found that "such action does not affect the equitable relations of the parties with respect to the validity of the Leet Lease," because the lease expired "irrespective of Bonner's having taken gas without the consent of defendants."

The defendants filed a motion for judgment as a matter of law or for a new trial, which the district court denied on August 18, 2008. The defendants appeal this order.

## II. DISCUSSION

### A. Standard of review

6

"The district court's conclusions of law are subject to de novo review on appeal, as are its findings as to 'ultimate facts' or mixed questions of law and fact." *McDermitt v. United States*, 954 F.2d 1245, 1250 (6th Cir. 1992).

**B. Quasi-estoppel**

The defendants argue that the plaintiff is estopped from denying the effectiveness of the lease because the plaintiff accepted payments after the litigation commenced.[2] Ohio "[c]ourts have recognized that a party who accepts the benefits of a contract or transaction will be estopped to deny the obligations imposed on it by that same contract or transaction," *Dayton Securities Assoc. v. Avutu*, 105 Ohio App. 3d 559, 563, 664 N.E.2d 954, 957 (1995), a species of estoppel described as "acceptance of benefits" or "quasi estoppel." *Id.* at 564, 664 N.E.2d at 957 (citing *Hampshire Cty. Trust Co. of N. Hampton, Mass. v. Stevenson*, 114 Ohio St. 1, 13-17, 150 N.E. 726, 729-731 (1926)). "[S]trict adherence to some of the elements of technical estoppel, such as knowledge and reliance, may not be required for the doctrine to be invoked." *Id.* For estoppel to apply, the conduct of the party to be estopped must be "inconsistent" with the termination of the contract. *Stevenson*, 114 Ohio. St. at 19, 150 N.E. at 731 (holding that estoppel applies to prevent a person who induced reliance by another on his course of conduct from "assum[ing] a position or assert[ing] a title inconsistent with such course of conduct"); *Rayl v. East Ohio Gas Co.*, 46 Ohio App.2d 175, 179, 348 N.E.2d 390, 393 (1975) (noting that estoppel would apply if the landowner acted in a manner "inconsistent with the attempted termination of the agreement[]"); *cf. Greer-Burger v. Temesi*, 116 Ohio St. 3d 324, 331, 879 N.E.2d 174, 183-84 (2007) (noting that judicial estoppel only applies to a situation where the litigant takes a position inconsistent with one he took previously).

_____

[2]The defendants do not claim that any other conduct by the plaintiff gives rise to estoppel.

Through answers to interrogatory three, the jury found that the plaintiff did not accept royalty payments. The district court relied on this finding to hold that estoppel was not warranted in this case. The defendants assail this conclusion on three grounds. They first argue that the jury's finding that these payments were not "royalty payments" is unsupportable by the evidence presented at trial, so the defendants are entitled to judgment as a matter of law, or at least a new trial. They posit that an improper argument made by Bonner's counsel during closing argument must have led the jury astray. Alternatively, they suggest that the question posed to the jury on the special verdict form was flawed.

These arguments share a common, yet faulty, premise: the payments must be considered to be royalty payments under the lease, and the plaintiff is estopped from challenging the lease as long as it had accepted these "royalty payments." However, whether the plaintiff is estopped actually turns on whether the plaintiff acted in a manner "inconsistent" with its litigating position. *See Stevenson*, 114 Ohio. St. at 19, 150 N.E. at 731. The plaintiff's acceptance of the payments, whether they be called "royalty" payments or not, is not dispositive of this question, because the plaintiff was entitled to at least this payment regardless of whether the lease had been terminated. If the lease was no longer in effect, the plaintiff was entitled to 100% of the value of resources taken from its property, and could properly treat the 12.5% as a partial payment towards the defendants' debt. Bonner made this point clearly and unequivocally in the letter dated December 16, 2004, sent to Power Gas before the checks were negotiated, and there can be no basis to claim that the defendants did not understand Bonner's position or were misled by its conduct.

The defendants argue that the case of *Rayl v. East Ohio Gas Co.*, 46 Ohio App. 2d 175, 179, 348 N.E.2d 390, 393 (1975), compels us to hold that accepting any payment during litigation gives

8

rise to estoppel. In *Rayl*, the landowners sought a judicial decree that their agreements with a gas company had ended. The court found that the agreements were terminable at will by either party, but that the landowners were estopped from arguing that the lease was over based on their conduct of accepting payments and taking free gas from the company's storage chamber after the alleged termination date. The court held that "Although plaintiffs did not intentionally misrepresent any facts to defendant, they did act in a manner inconsistent with the attempted termination of the agreements. Because plaintiffs accepted the benefits of their agreement during the pendency of this litigation, they are estopped from pursuing this action at this time." *Id.*

To the contrary, *Rayl* actually supports Bonner's position. *Rayl* does nothing to change the basic rule that the plaintiff's conduct must be "inconsistent with the attempted termination of the agreement[]" for estoppel to apply. *Id.* In contrast to the *Rayl* landowners, Bonner did not act in a manner "inconsistent with the attempted termination of the agreement[]" by negotiating the payments. The *Rayl* landowners cashed not only royalty payments, but rent checks to which they would not be entitled except under the terms of the lease agreement. They also accepted free gas, which was one of the benefits to which they were entitled under the agreement. Bonner's deposit of Power Gas's payments, on the other hand, is equally consistent with the termination of the lease as with its continuation, because Bonner had a claim to payment in the absence of the lease. Bonner did not accept a benefit that it could only receive under the lease, but a benefit that it was equally entitled to with or without the lease.

The case relied on by the plaintiff, *Stitzlein v. Willey*, 1979 WL 209691 (Ohio. Ct. App. Dec. 12, 1979), is more persuasive on the facts of this case. There the Ohio Court of Appeals rejected the argument that the landowners were estopped from arguing that the lease had expired because they

9

had accepted royalty payments, noting that, like here, "as owners of the land, [they] were entitled to at lease [sic] the royalties, no matter what the outcome in this case." *Id.* at *2. Instead, the court made clear that "[b]efore a party is estopped by the receipt of benefits from a transaction to deny the validity of the transaction it must initially appear that he is not otherwise entitled to those benefits." *Id.*

This comports with the longstanding rule from other jurisdictions that "[e]stoppel does not arise where the person accepting the benefits is entitled thereto, regardless of the questioned transaction." *Grand Trunk Western R. Co. v. H.W. Nelson Co.*, 116 F.2d 823, 836 (6th Cir. 1941); *accord Bankers Trust Co. v. Pacific Employers Insurance Co.*, 282 F.2d 106, 112 (9th Cir. 1960) ("An acceptance of a portion of that to which a party is entitled, unless by way of compromise and settlement or accord and satisfaction, is not a bar to the subsequent assertion of a claim for the rest, especially where acceptance is accompanied by a reservation of the remaining rights, or it is manifest that the party doesn't intend to surrender them."); *Cook v. Ball*, 144 F.2d 423, 438 (7th Cir. 1944) ("It is well settled that even by quasi estoppel one cannot be estopped by reason of accepting that which he is legally entitled to receive in any event."). The plaintiff here did no more than accept a payment that the plaintiff was entitled to regardless of the termination of the contract, and this was what the plaintiff said it was going to do. Estoppel is inapplicable to these facts.

Having rejected the premise behind the defendants' claims of error, we also find no error in the judgment. The defendants argue that we are bound to those aspects of the district court's reasoning that favor the defendants because the plaintiff did not file a cross appeal. This position is without merit. While it is true that there is an "unwritten but longstanding rule [that] an appellate court may not alter a judgment to benefit a nonappealing party," *Greenlaw v. United States*, 128 S.

10

Ct. 2559, 2564 (2008), "a cross-appeal is inappropriate when the only relief sought is an affirmance of the district court judgment," *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 571 n. 2 (6th Cir. 2008) (citing *Bailey v. Dart Container Corp.*, 292 F.3d 1360, 1362 (Fed. Cir. 2002)); *Olympic Fastening Systems, Inc. v. Textron Inc.*, 504 F.2d 609, 617 (6th Cir. 1974) ("The appellee may, without having to file a cross appeal, defend a judgment on any ground consistent with the record, even if rejected in the lower court."); *see also* Charles Alan Wright et al., 16A Fed. Prac. & Proc. Juris.4th § 3950.7 (noting that "any named party, without filing a separate or cross-appeal, may make or renew in the appellate court any available argument designed to preserve or justify that portion of the judgment favorable to that party"). The plaintiff merely seeks affirmance of the district court, and we can affirm the district court's judgment on grounds other than those relied upon by the court. *E.g.*, *Eidson v. State of Tennessee Dept. of Children's Serv.*, 510 F.3d 631, 641 (6th Cir. 2007). The estoppel claimed does not apply in this case.

### C. Unclean hands

The defendants also argue that the plaintiff cannot prevail because it has unclean hands. "The 'clean hands doctrine' of equity requires that whenever a party takes the initiative to set in motion the judicial machinery to obtain some remedy but has violated good faith by his prior-related conduct, the court will deny the remedy." *Marinaro v. Major Indoor Soccer League*, 81 Ohio App. 3d 42, 45, 610 N.E.2d 450, 452 (1991) (citing *Bean v. Bean*, 14 Ohio App. 3d 358, 363-364, 471 N.E.2d 785, 791-793 (1983)). "The application of the unclean hands defense 'depends upon the connection between the complainant's iniquitous acts and the defendant's conduct which the complainant relies upon as establishing his cause of action.'" *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 797 (6th Cir. 2009) (quoting *McClanahan v. McClanahan*, 79 Ohio App. 231, 72

11

N.E.2d 798, 800 (1946)).  Accordingly, this rule does not require the plaintiff to be a saint in all of its affairs, but only "that the plaintiff must not be guilty of reprehensible conduct with respect to the subject matter of [its] suit."  *Marinaro*, 81 Ohio App. 3d at 45, 610 N.E.2d at 452 (citing *Kinner v. Lake Shore & Michigan S. Ry. Co.*, 69 Ohio St. 339, 69 N.E. 614 (1904)).[3]

As an initial matter, the parties disagree what standard of review we should apply to the district court's finding that unclean hands should not apply in this case.  The plaintiff contends that the application of the doctrine is reviewed only for an abuse of discretion, while the defendants contend that the application is a conclusion of law subject to de novo review.

"Ordinarily, an abuse of discretion standard applies to . . . review of a district court's application of the unclean hands doctrine."  *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (quoting *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1354 (3d Cir. 1989)).  However, whether the unclean hands doctrine can be applied in a particular case may raise an issue of law, subject to de novo review.  *Northeast*, 868 F.2d at 1354.  Under any level of review, we think the district court's rejection of defendants' "clean hands" arguments is unassailable.

The defendants argue that the district court erred by finding that taking the gas was not sufficiently related to the issue of whether the lease was still in effect to implicate the clean hands doctrine.  After all, the defendants contend, the jury found that gas was taken, and there was testimony at trial that this taking may have posed an obstacle to gas production.  The defendants conclude that the district court should have found that the plaintiff's unclean hands prevent recovery.

---

[3]The plaintiff argues on appeal that this defense only applies to cases sounding in equity, and therefore cannot apply to its declaratory judgment action.  We need not decide this issue because we reject the defense on the merits.

We disagree. Even if we assume that the plaintiff's conduct was sufficiently inequitable to implicate the doctrine, the district court could properly conclude that the "connection between the complainant's iniquitous acts and the defendant's conduct which the complainant relies upon as establishing his cause of action," *Wuliger*, 567 F.3d at 797, is not substantial enough to allow the defense to be applied in this case. The plaintiff took gas from the Pochedly Pipeline System, which included gas extracted from dozens of wells, including some mined by entities other than the defendants. The link between taking gas from a system collecting from dozens of wells and the cessation of activity in all four wells covered by the Leet Lease is sufficiently tenuous that the district court could properly decline to apply the clean hands doctrine in favor of the defendants. There is no proof in the record before us regarding the amount of gas taken for the grain dryer and whether this gas would have negatively affected the record of output of the plaintiff's wells.[4] To the contrary, gas was taken for the grain dryer during years that the jury found there was no production from the plaintiff's wells. The district court could properly conclude that the plaintiff's inequitable conduct was not sufficiently related to the subject matter of the suit.

The defendants argue in the alternative that there was error in the verdict form because it did not specifically ask the jury to decide whether the plaintiff's conduct was related to the relief the plaintiff sought. Because defendants' objection was not preserved, we review it for plain error only "if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2); *Aetna Cas. and Sur. Co. v. Leahey*

---

[4]A post-briefing letter sent by defendants with the court's permission addressing this point contends that this proof would have been developed during the second stage of the bifurcated trial when the defendants sought to prove damages. However, because an element the defendants must show to prevail on the defense is a connection between the suit and the inequitable conduct, the time for introducing evidence in support of the connection was at the stage where the merits of the defense were considered.

13

*Const. Co.*, 219 F.3d 519, 541 (6th Cir. 2000). We find no error, much less a plain error, in the interrogatory. Whether a plaintiff's conduct is sufficiently related to his basis for relief is a question for the court, not a jury. *See Smith v. World Ins. Co.*, 38 F.3d 1456, 1462 (8th Cir. 1994) ("[T]he determination of equitable defenses and equitable remedies is a matter for the court to decide, not the jury."); *see also International Union v. Cummins, Inc.*, 434 F.3d 478, 487 (6th Cir. 2006) (holding that determining whether laches applies is question for court). There was no error in the district court deciding the question of relatedness itself, and no error in its rejection of the defense.

### III. CONCLUSION

Because we find that the defendants are not entitled to prevail on either affirmative defense, we **AFFIRM** the judgment of the district court.