REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 200

September Term, 2016

_____

RENE MITCHELL

v.

KEITH YACKO, *et al.*

_____

Nazarian,
Leahy,
Friedman,

JJ.

_____

Opinion by Leahy, J.

_____

Filed: May 31, 2017

The unscrupulous mortgage transaction in this case unfolded when Rene Mitchell ("Appellant") sought a fixed rate loan for the purchase of a residential property and executed a sales contract specifying the same. At the closing a month later, Ms. Mitchell, to her surprise, realized that the loan documents she had just executed were actually for an adjustable rate mortgage. She halted the closing, had the word "VOID" stamped on all executed documents, and informed the lender of the error and requested acknowledgment of cancellation in writing. Several days and notices later, the lender sent Ms. Mitchell a notice stating that her loan had been modified to a fixed rate loan at 6.2% interest. Ms. Mitchell was apparently satisfied with this and made payments on the loan for nearly eight years after moving into the residence. No new loan documents were executed.

Ms. Mitchell defaulted in January 2013, and in August 2015, substitute trustees for the current loan servicer, Keith M. Yacko, Robert E. Frazier, Thomas J. Gartner, Jason L. Hamlin, Glen H. Tschirgi, and Gene Jung ("Appellees" or "Substitute Trustees"), filed an order to docket a foreclosure in the Circuit Court for Prince George's County. Ms. Mitchell filed a motion to stay the sale and dismiss the action, arguing, *inter alia*, that the order to docket did not contain copies of a valid and enforceable note or deed of trust. After her motion was denied without a hearing, Ms. Mitchell appealed.

A close examination of the documents in the record reveals that on July 14, 2005— three days after Ms. Mitchell terminated the closing—the adjustable rate deed of trust was filed in the land records for Prince George's County with the "VOID" marks excised. This document, devoid of all "VOID" marks, was attached as an exhibit to the 2015 order to docket filed 10 years later. Also, appearing for the first time was a copy of the Adjustable

1

Rate Note that Ms. Mitchell signed at the closing, with the "VOID" stamps removed. In place of the "VOID" stamps, both documents donned new stamps reading simply "REDACTED."

Ms. Mitchell raises four questions in her appeal, but the first is dispositive: "Did the Circuit Court err in failing to dismiss the foreclosure action because the Note and Deed of Trust in the Order to Docket are not valid and enforceable?"[1] We hold that a foreclosure proceeding cannot be instituted upon forged documents. The aforementioned documents—clearly false and materially altered to look genuine—suggest forgery,[2] and equitable relief is not available to a party with unclean hands. Ms. Mitchell's Rule 14-211 motion to stay the sale and dismiss the action stated a facially valid defense to the foreclosure. As such, the circuit court erred in denying the motion without a hearing. We vacate the court's order and remand for a hearing.

---

[1] The other questions Ms. Mitchell presents are as follows:

2. "Did the Circuit Court err in failing to dismiss the foreclosure action because the certification that the Note was true and accurate and owned by the foreclosing party was invalid?"

3. "Did the Circuit Court err in failing to dismiss the foreclosure action because the endorsement in blank of the Note was invalid?"

4. "Did the Circuit Court err in failing to dismiss the foreclosure action because service of the Order to Docket was never properly effected?"

[2] A forgery is "[a] false or altered document made to look genuine by someone with the intent to deceive." Black's Law Dictionary 766 (10th ed. 2014).

## BACKGROUND

### A. Closing the Closing

In June 2005, Rene Mitchell decided to purchase residential property located at 9003 Harness Way in the City of Bowie, Maryland ("the Property") from Maria and Harold J. Moxley. On June 8, 2005, Ms. Mitchell signed a sales contract, listing the purchase price at $555,900.00.

Ms. Mitchell desired to finance the purchase with a fixed rate 30-year mortgage from Fremont Investment and Loan ("Fremont").[3] According to an affidavit she filed in the underlying foreclosure action, Ms. Mitchell and Fremont had agreed to a conventional fixed rate loan, as documented by the terms of the sales contract. However, at the closing on July 11, 2005, Ms. Mitchell noticed, contrary to her expectations and much to her surprise, that the promissory note contained an adjustable interest rate and the deed of trust contained an adjustable rate rider.

Ms. Mitchell then informed her realtor and the settlement agents of the error, requested that the closing be terminated, and refused to sign any further documents. She also requested the return of all documents that she had signed up to that point. **E. 34.**

---

[3] The sales contract lists a first loan of $444,720.00, and a second loan valued at $111,180.00—both secured by deeds of trust. The sales contract states that both deeds of trust to purchase the Property will have fixed rates. The settlement statement Ms. Mitchell signed at the closing lists a first mortgage with a 6.2% fixed interest rate and a second mortgage with a 9.125% interest rate. At oral argument before this Court, Ms. Mitchell's counsel said that the second deed of trust was executed, but that it has never been enforced.

The record does not contain a copy of a second deed of trust or note. All references in this opinion to the "deed of trust" or "note" refer to the first deed of trust and note which are at issue in this case.

3

Although the settlement agents, Barbara Licon and Philip Sardelis, agreed to terminate the closing, they told Ms. Mitchell that they had to keep the documents and shred them. Consequently, Ms. Mitchell requested that they stamp a "VOID" mark on each page of each document that she signed. Ms. Licon complied. Ms. Mitchell also wrote a note on the adjustable rate note which read: "I requested this copy of Voided documents with Barbara Licon signature of Void [sic]. My Realtor is present to witness. We are to come back tomorrow to execute corrected documents. I have requested Fremont provide me a letter acknowledging cancellation of this debt loan, Deed + promissory note. RM[.]"

Ms. Mitchell followed-up on the same day with the following letter to Fremont:

I am requesting that you immediately cancel my loan and return all monies due back to me based on the Loan Documents, executed by Sandler Title & Escrow, LLC on behalf of Fremont Investment & Loan, not reflecting my sales contract[.]

Upon my review of the signed loan documents prepared by Barbara Licon from Sandler Title & Escrow, LLC . . . [t]he loan package was not explained very well and was rushed. I saw many errors in the loan package mid way through the closing and stopped the closing. Ms. Licon stated that they would correct the documents and I must immediately contact Fremont Investment & Loan directly and cancel the original loan documents, which she kept in her possession, claiming she would have to shred. I kept the blank documents and requested her to draw a void line across each one. None of the second copy documents have my signature and I am very uncomfortable with leaving the original documents for her to shred but she states this is a normal procedure. My realtor Paula Haynes was a witness to this conversation between Ms. Licon and me as was the notary Mr. Phillip Sardelis who also signed the documents as we went through them. Both can also verify that I requested the documents to this loan be destroyed.

. . . The loan terms are:

1st Mortgage 30 year conventional firm fixed at an interest rate of 6.200%

2nd Mortgage 30 year conventional firm fixed at an interest rate of 9.125%

Please advise me on what the next course of action is to provide new accurate loan documents for review and signatures.

Again, this is my official notice to cancel the original Adjustable Rate loan documents that I did not agree to purchase and were not accurate based on the attached documents for the property at 9003 Harness Way, Bowie[.]

Fremont responded by letter on July 12, 2005, acknowledging receipt of Ms. Mitchell's request to cancel her loan. Fremont agreed to cancel the loan "transaction," and indicated there was a "new transaction" that was adjusted to provide the "proper loan requirements."[4]

On the same day, Fremont issued two notices to Ms. Mitchell. The first affirmed that, "[a]s of the date of this Notice, the principal loan balance that is owed to Fremont Investment & Loan for **444,728.00 AT 8.6770% ANNUAL PERCENTAGE RATE AS REFLECTED ON THE FEDERAL TRUTH-IN-LENDING DISCLOSURE**

---

[4] The text of this letter read in pertinent part:

After review of your loan and our acknowledgement of:
ERRORS AND OMISSIONS IN PROCESSING YOUR LOANS, REVIEW OF YOUR SALES CONTRACT, FIRST COMMUNITY MORTGAGE UNIFORM RESIDENTIAL LOAN APPLICATION, HUD-1 AND YOUR INTENTION TO OBTAIN A CONVENTIONAL 30 YEAR FIXED RATE LOAN.
WE HAVE CANCELLED THIS TRANSACTION, THE MORTGAGE, LIEN OF SECURITY INTEREST IS ALSO CANCELLED AND WE HAVE ADJUSTED THE NEW TRANSACTION TO REFLECT THE PROPER LOAN REQUIREMENTS.
Within 20 calendar days we must take the steps necessary to reflect that fact that the mortgage/lien/security interest on your home has been cancelled. You may keep any money or property we have given you until we have done the things we mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned at the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you ma[]y keep it without further obligation.

**STATEMENT IS CANCELLED AS OF THE ABOVE REFERENCED DATE.**"

(Emphasis in original).

The second notice stated that Ms. Mitchell's loan would henceforth be a conventional fixed rate loan, and provided that:

> As of the date of this Notice, the principal loan balance that is owed to Fremont Investment & Loan for **444,728.00 AT 6.200% 360 MONTHS CONVENTIONAL FIXED RATE FULLY AMORTIZING LOAN.**
>
> In addition, we would like to advise you that you have thirty (30) days after receipt of this Notice to dispute the validity of the above debt, or any portion thereof. If you do not do so, the debt will be assumed to be valid. If you canceled notify us in writing within this thirty (30) day period that you dispute the debt, or any portion thereof, we will obtain and mail to you verification of the debt.
>
> Furthermore, you have thirty (30) days after the receipt of this Notice to request the name and address of the original creditor, if different from the current creditor. Upon receipt of a written request from you within the thirty (30) day period, we will provide you with the name and address of your original creditor.

(Emphasis in original).

No new loan documents were executed. On July 15, 2005, Fremont returned the cancelled documents—the deed of trust and note, bearing the "VOID" marks and Ms. Mitchell's handwritten note—to Ms. Mitchell. Significantly, the first pages of the deed and note sent to Ms. Mitchell contain stamps reading "CANCELLED AND SATISFIED IN FULL without recourse" followed by a signature line dated July 15, 2005. Although it takes some deciphering, the signature line on the stamp reads "Fremont Investment & Loan, Lizbeth Stokes, Vice President."

### B. Foreclosure Proceedings

Ms. Mitchell lived at the Property and made consistent payments for almost eight

years.  On January 1, 2013, Ms. Mitchell first failed to make a payment on the loan and continued to miss installment payments each month thereafter, according to the affidavit of default and indebtedness executed by an agent for the loan servicing company.[5]

On October 10, 2014, the Substitute Trustees, acting for U.S. Bank, sent a notice of intent to foreclose to Ms. Mitchell.  Then, on August 24, 2015, the Substitute Trustees filed an order to docket foreclosure in the Circuit Court for Prince George's County.

As required by Maryland Rule 14-207, the order to docket foreclosure contained copies of a note and deed of trust as exhibits revealing that 10 years earlier a deed of trust was filed in the land records for Prince George's County on July 14, 2005—just three days after the terminated closing.[6]  These documents were apparently doctored, because they *do*

---

[5] On December 1, 2005, Fremont transferred the servicing of the loan to HomeEq Servicing Corporation ("HomeEq").  In 2008, Fremont filed for bankruptcy, and it sold some of its assets to CapitalSource.  On September 1, 2010, HomeEq transferred the loan's servicing rights to Ocwen Loan Servicing, LLC ("Ocwen"), and Ocwen became the loan's servicing agent.  On June 3, 2013, Mortgage Electronic Registration Systems ("MERS"), as nominee for Fremont, assigned the deed of trust to a securitized trust in which U.S. Bank National Association ("U.S. Bank") served as Trustee under a Pooling and Servicing Agreement as of November 1, 2005 ("Mastr Asset-Backed Securities Trust 2005-FRE1 Mortgage Pass-Through Certificates, Series 2005-FRE1").

The record is equivocal as to whether any loan servicer actually charged an interest rate higher than 6.2% (and Ms. Mitchell does not contend that any entity did, either in her circuit court motions or in her brief before this court).  What is clear is that the current servicing agent, Ocwen, sent Ms. Mitchell a letter on June 24, 2015, describing the loan as an "Adjustable-Rate Mortgage" and stating that the interest rate could be changed every six months. Thus, in 2015, Ocwen treated the loan as if it had an adjustable rate. Apparently, something was lost in translation between what Fremont had agreed to in its letters to Ms. Mitchell and the multiple servicers and noteholders along the way.

[6] The deed of trust was attached an exhibit to the order to docket and bears a stamp indicating that it was filed in the land records of Prince George's County on July 14, 2005. Given that "[a] deed of trust is a security device" that "secures repayment of the loan[,]" *Springhill Lake Investors LP v. Prince George's Cnty.*, 114 Md. App. 420, 428 (1997), the

7

*not* bear the "VOID" marks. Instead, the copy of the deed of trust filed with the order to docket bears the marking "REDACTED" on each page, and contains an adjustable rate rider. Similarly, each page of the adjustable rate note bears the marking "REDACTED." The note does not contain the "VOID" marks, Ms. Mitchell's handwritten note, or the lender's cancellation mark.[7]

As further required by Maryland Rule 14-207, the order to docket contains an affidavit, executed by the servicing agent, stating that the note is a "true and accurate copy."[8] Another affidavit, this one executed by Robert E. Frazier, affirms, in pertinent part, "[t]hat [] attached hereto is a true and accurate copy of the Deed of Trust that is the

---

lender typically files the deed of trust in the land records to protect its security interest. There is, however, no information in the record on appeal verifying who filed the deed of trust in this case in 2005.

[7] For comparison, this opinion contains an appendix with the first pages of (1) the original note and deed of trust that Ms. Mitchell executed bearing the "VOID" stamps, handwritten note and cancellation stamp, and (2) the "REDACTED" note and deed of trust filed with the order to docket. These documents raise numerous questions, including:

Who filed the deed of trust in the land records on July 14, 2005?

Because Fremont sent Ms. Mitchell a note and deed of trust with the "Cancelled and satisfied and full" stamp and "VOID" marks the day after the deed of trust was filed in the land records, why doesn't the copy of the deed of trust sent to Ms. Mitchell show the stamp indicating that the same document had been filed in the land records?

Were the "REDACTED" marks placed on the deed of trust when it was filed in the land records in 2005, or were they were added to the document when the order to docket was filed in 2015?

[8] This affidavit also states that U.S. Bank is the owner of the note and that Ocwen is the servicer for US Bank.

8

lien instrument subject to this foreclosure action. If applicable, any personal and/or private information has been redacted as noted on the document." The Substitute Trustees also filed an affidavit of default and indebtedness, stating that, as of June 25, 2015, Ms. Mitchell owed $478,879.94.

On September 25, 2015, before the Substitute Trustees filed the final loss mitigation affidavit, Ms. Mitchell filed, under Maryland Rule 14-211, a "Motion to Dismiss for Improper Service and Motion to Stay Sale and Dismiss Action for Failure to State a Claim." In her *pro se* motion, she argued that she was not served properly and that the action should, as a result, be dismissed. On the merits she argued that: (1) the order to docket did not provide a copy of a valid and enforceable note or deed of trust because the note and deed of trust were voided; (2) the Substitute Trustees and U.S. Bank had failed to plead that they owned or held the note and deed of trust; and (3) the note was non-negotiable and the indorsement was invalid.

On November 6, 2015, the Substitute Trustees filed an opposition, arguing that Ms. Mitchell was served properly. In addition, the Substitute Trustees contended that the note and deed of trust were valid and had not been cancelled, but that only the loan's interest rate had been adjusted, and that this was consistent with the fact that Ms. Mitchell never returned the proceeds of the loan and made consistent payments for almost eight years. The Substitute Trustees further maintained that they included an affidavit certifying ownership and proper indorsement of the note in their order to docket foreclosure and that the note was negotiable.

On February 11, 2016, the circuit court, without a hearing, entered an order denying

9

Ms. Mitchell's motion to stay the sale and dismiss the action. On March 14, 2016, Ms. Mitchell timely noted an appeal to this Court.

## DISCUSSION

## I.

### The Voided Note and Deed

Before this Court, Ms. Mitchell argues that the note was voided before the closing was completed, and that she cancelled the transaction properly, as acknowledged by Fremont in their cancellation notices. She contends that the note and deed of trust included in the order to docket are fraudulent because someone had removed the "VOID" marks and other information.

The Substitute Trustees respond by claiming that Ms. Mitchell and Fremont modified the interest rate, and that they did not cancel the loan. They observe that Ms. Mitchell's actions in keeping the loan proceeds and making consistent payments on the note as if it were a fixed rate loan for almost eight years are inconsistent with the cancellation of the note and deed of trust. Indeed, they point out that Ms. Mitchell moved into the house and made payments to the bank without demanding a new note or deed of trust—a beguiling argument, until we examine the evidence and see that it is beside the point.

We open our analysis with Maryland Rule 14-207, which addresses the pleadings and exhibits that must be filed to commence a foreclosure, and Rule 14-211, which addresses a borrower's ability to file a motion to stay a foreclosure sale. Maryland Rule 14-207 (a) provides that "[a]n action to foreclose a lien pursuant to a power of sale shall be

10

commenced by filing an order to docket." Maryland Rule 14-207(a)(1). Then, subsection

(b) specifies which exhibits must be filed with the order to docket. Relevant to the present

case, an order to docket must "include or be accompanied by:"

> (1) **a copy of the lien instrument supported by an affidavit that it is a true and accurate copy**, or, in an action to foreclose a statutory lien, a copy of a notice of the existence of the lien supported by an affidavit that it is a true and accurate copy;
> (2) an affidavit by the secured party, the plaintiff, or the agent or attorney of either that the plaintiff has the right to foreclose and a statement of the debt remaining due and payable;
> (3) **a copy of any separate note or other debt instrument supported by an affidavit that it is a true and accurate copy** and certifying ownership of the debt instrument;
> (4) a copy of any assignment of the lien instrument for purposes of foreclosure or deed of appointment of a substitute trustee supported by an affidavit that it is a true and accurate copy of the assignment or deed of appointment.

Md. Rule 14-207(b) (emphasis added). The law is clear then, that in order to commence a

foreclosure action pursuant to a power of sale, as in the present case, one must file an order

to docket a foreclosure accompanied by copies of the lien instrument (the deed of trust)

and the debt instrument (the note), supported by affidavits stating that they are "true and

accurate cop[ies.]"[9]

Before we turn to Maryland Rule 14-211, we consider *Wells Fargo Home*

*Mortgage, Inc. v. Neal*, 398 Md. 705 (2007), a foreclosure case that guides our analysis.

In that case, Wells Fargo, the mortgagee by assignment, instituted foreclosure proceedings

---

[9] A provision in the Real Property Article governing foreclosure procedures also requires that a copy of the debt instrument and a certified copy of the note instrument must be filed with the order to docket. Maryland Code (1974, 2015 Repl. Vol.), Real Property Article ("RP"), § 7-105.1.

against Neal, the homeowner, after Neal fell behind on his mortgage payments. 398 Md. at 711-12. Neal then filed a complaint against Wells Fargo, instituting a new action and alleging that Wells Fargo breached the terms of the underlying deed of trust by not participating in pre-foreclosure loss mitigation prescribed by the Department of Housing and Urban Development. *Id.* at 712. His complaint argued that Wells Fargo's failure to engage in loss mitigation was a breach of contract that would entitle him to money damages, and requested declaratory and injunctive relief preventing Wells Fargo from foreclosing on the property. *Id.* at 712-13 & n.4. The circuit court granted summary judgment to Wells Fargo after a hearing. *Id.* at 713.

The Court of Appeals held, first, that Neal could not advance, as an affirmative claim, a breach of contract claim based on Wells Fargo's alleged violation of the HUD regulations mentioned in the deed of trust. *Id.* at 711. Nonetheless, the Court also held that Neal *could* raise a violation of the HUD regulations as a defense in a motion to stay the sale and dismiss the foreclosure. *Id.*

The Court's reasoning is applicable to the present case. The Court observed that a foreclosure involving a power of sale—as we have in the present case—is "'intended to be a summary in rem proceeding' which carries out "'the policy of Maryland law to expedite mortgage foreclosures.'" *Id.* at 726 (quoting *G.E. Capital Mortg. Servs., Inc. v. Levenson*, 338 Md. 227, 245 (1995)). Nonetheless, the Court stated that former Maryland Rule 14-204, governing the commencement of foreclosure actions,[10] did not "prohibit mortgagors

---

[10] In 2007, the year of the *Neal* case, former Maryland Rule 14-204 governed both commencement of a foreclosure action and the pleadings and exhibits that must be filed in

12

from raising viable defenses to a foreclosure to which the mortgagee is not entitled." *Id.* (citing *Bachrach v. Washington United Coop.*, 181 Md. 315, 319 (1943)). The Court then stated that a mortgagor could combat a foreclosure in three ways: a pre-sale injunction, a post-sale exception, and an exception to the auditor's statement of account. *Id.*

Importantly, the Court then specified that Maryland's foreclosure procedure was "equitable in nature." *Id.* at 728 (citations omitted). Therefore, the Court explained that

> **the venerated equity doctrine of clean hands which requires that "he who comes into equity must come with clean hands,"** *Hlista v. Altevogt*, 239 Md. 43, 48, 210 A.2d 153, 156 (1965), **is applicable in foreclosure proceedings such as the one implicated in the present case.**
>
> The clean hands doctrine states that **"courts of equity will not lend their aid to anyone seeking their active interposition, who has been guilty of fraudulent, illegal, or inequitable conduct in the matter with relation to which he seeks assistance."** *Hlista*, 239 Md. at 48, 210 A.2d at 156; see also *Hicks v. Gilbert*, 135 Md. App. 394, 400, 762 A.2d 986, 989–90 (2000). The doctrine does not mandate that those seeking equitable relief must have exhibited unblemished conduct in every transaction to which they have ever been a party, **but rather that the particular matter for which a litigant seeks equitable relief must not be marred by any fraudulent, illegal, or inequitable conduct**. *Hlista*, 239 Md. at 48, 210 A.2d at 156; *Hicks*, 135 Md. App. at 400–01, 762 A.2d at 990 ("There must be a nexus between the misconduct and the transaction, because '[w]hat is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts.'") (quoting *Adams v. Manown*, 328 Md. 463, 476, 615 A.2d 611, 617 (1992)).

*Id.* at 729-30 (emphasis added). Thus, in order to seek relief through foreclosure, the matter

order to institute a foreclosure action. *See* Maryland Rule 14-204 (2007 Repl. Vol.). In 2009, Maryland Rule 14-204 was divided into two Rules: Rule 14-204 and Rule 14-207. Former Rule 14-204 continued to govern the institution of an action, *i.e.*, the appropriate persons who may institute a foreclosure, whereas Rule 14-207 governed the required pleadings and exhibits that one must file to institute a foreclosure action, *e.g.*, the order to docket and copies of the note and deed of trust. *See* Maryland Rules 14-204 and 14-207 (2010 Repl. Vol.). The two Rules retain this structure today. *See* Maryland Rules 14-204 and 14-207.

"must not be marred by any fraudulent, illegal, or inequitable conduct." *Id.* at 730.

As the *Neal* opinion observed, a party may combat a foreclosure before the sale by filing what is currently called a motion to stay the sale and dismiss the action (what the *Neal* Court called a "pre-sale injunction").

Now we turn to Maryland Rule 14-211, which governs motions to stay and dismiss and which begins by defining who may file:

> **(a) Motion to Stay and Dismiss.**
> (1) *Who May File.* The borrower, a record owner, a party to the lien instrument, a person who claims under the borrower a right to or interest in the property that is subordinate to the lien being foreclosed, or a person who claims an equitable interest in the property may file in the action a motion to stay the sale of the property and dismiss the foreclosure action.

After stating the timing requirements for filing the motion, Maryland Rule 14-211(a) lists the substantive requirements of the motion:

> (3) *Contents.* A motion to stay and dismiss shall:
> (A) be under oath or supported by affidavit;
> (B) state with particularity the factual and legal basis of each defense that the moving party has to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action;
> (C) be accompanied by any supporting documents or other material in the possession or control of the moving party and any request for the discovery of any specific supporting documents in the possession or control of the plaintiff or the secured party;
> (D) state whether there are any collateral actions involving the property and, to the extent known, the nature of each action, the name of the court in which it is pending, and the caption and docket number of the case;
> (E) state the date the moving party was served or, if not served, when and how the moving party first became aware of the action; and
> (F) if the motion was not filed within the time set forth in

14

subsection (a)(2) of this Rule, state with particularity the reasons why the motion was not filed timely.

Subsection (b) of the Rule then states that the circuit court may deny the motion without a hearing if the motion (1) was not timely filed and there is no good cause for this lack of compliance; (2) does not substantially comply with the Rule's requirements; or (3) does not state a valid defense on its face. If the motion fulfills these three requirements, however, the Rule goes on to say that the court must hold a hearing on the motion. Maryland Rule 14-211(b)(2). *See also Fishman v. Murphy ex rel. Estate of Urban*, 433 Md. 534, 543 n.5 (2013). Subsections (c) and (d) of the Rule address stays of sales pending hearings and scheduling orders, respectively. Finally, subsection (e), governing the court's final determination on the motion, provides:

> **(e) Final Determination.** After the hearing on the merits, if the court finds that the moving party has established that the lien or the lien instrument is invalid or that the plaintiff has no right to foreclose in the pending action, it shall grant the motion and, unless it finds good cause to the contrary, dismiss the foreclosure action. If the court finds otherwise, it shall deny the motion.

In *Buckingham v. Fisher*, 223 Md. App. 82 (2015), this Court analyzed the proper pleading standard for stating a facially valid defense under Rule 14-211, and whether a hearing on the merits is required to make a determination on the motion once a defense is properly pleaded. In that case, as in the instant case, the appellants filed a Rule 14-211 motion to stay or dismiss a foreclosure action filed against them. *Id*. at 85-86. The appellants there raised two defenses: one challenging the validity of the lien based on forgery and the other challenging the right of the trustees to foreclose based on defects in the notice of sale. *Id*. at 88.

15

Judge Friedman, writing for this Court, explained that "[i]t is clear from this provision[, Rule 14-211(a)(3),] that the factual and legal bases of a defense must be stated 'with particularity' and that any available supporting documents or material must be provided." *Id.* at 89. And, we recognized that a "[f]ailure to state a facially valid defense is one of the three grounds for denial at the initial determination phase[,]" but that, nonetheless, "Section 14-211(b)(2) [] requires that the court hold an evidentiary hearing on the merits if none of the three grounds for denial provided in subsection (b)(1) are present." *Id.* at 90.

The Court further stated that forgery is a valid defense under Rule 14-211, and set out the three elements of forgery as a defense under Rule 14-211: "'[1] a false making or material alteration, [2] with intent to defraud, [3] of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability.'" *Id.* at 93 (quoting *Harding v. Ja Laur Corp.*, 20 Md. App. 209, 212 (1974)).

Returning to the present case, we first recognize that the denial of a motion to stay a foreclosure sale and dismiss the action under Maryland Rule 14-211 "lies generally within the sound discretion of the trial court." *Anderson v. Burson*, 424 Md. 232, 243 (2011) (citing *Wincopia Farm, LP v. Goozman*, 188 Md. App. 519, 528 (2009)). Although we generally review the circuit court's denial of Ms. Mitchell's Rule 14-211 motion for an abuse of discretion, *Svrcek v. Rosenberg*, 203 Md. App. 705, 720 (2012), "[w]e review the trial court's legal conclusions *de novo.*" *Id.* (citing *Wincopia Farm*, 188 Md. App. at 528). Further, we review the circuit court's decision to deny Ms. Mitchell's motion without a hearing for legal correctness. *Buckingham*, 223 Md. App. at 92-93.

16

We hold that a party cannot institute a foreclosure upon forged documents. Foreclosure is an equitable procedure, and the Substitute Trustees must demonstrate, upon remand, that this particular foreclosure has not "be[en] marred by [] fraudulent, illegal, or inequitable conduct."[11] *Neal*, 398 Md. at 730.

When Ms. Mitchell discovered at the July 11, 2005 closing that the deed of trust and the note contained an adjustable rate, she terminated the closing and had "VOID" stamped on the documents. The record contains no other deed of trust or note executed by the parties, nor is there any evidence that a valid deed or note exists. Nonetheless, the order to docket foreclosure was filed with copies of a deed of trust and note—materially altered to look genuine—accompanied by an affidavit stating that they are each "[a] true and accurate copy[.]" But a "true and accurate copy" of the deed of trust would have had "VOID" displayed on each page, and the note that Ms. Mitchell signed would have contained her notations indicating that it had been voided along with the cancellation stamp signed by Fremont's representative.

Ms. Mitchell's *pro se* Rule 14-211 motion sufficiently pleaded her defense. Her motion stated:

> **Attached to the Plaintiff's Order to Docket is what is alleged to be a "Redacted" copy of the canceled Adjustable Rate Promissory Note and Deed of Trust. However, the alleged "Redacted" copy of the canceled**

---

[11] We note that the facts of this case begin in 2005 and that there have been several different secured parties, trustees, and substitute trustees—as well as counsel representing these entities—along the way. We cannot tell from this record just who knew what and when, or what person committed a potentially fraudulent act. It is, however, pellucid that the materially altered deed of trust should not have been filed in the land records for Prince George's County, nor should the materially altered note and deed of trust have been passed off as "true and accurate copies" in the order to docket foreclosure.

**Adjustable Rate Promissory Note and Deed of Trust are exactly the same as the cancelled Adjustable Rate Promissory Note and Deed of Trust returned by the lender Fremont to the Defendant with the exception of the missing signed "Cancellation and Satisfaction in Full" stamp placed by the lender Fremont and the "Void" stamps and initials placed by the settlement agent Barbara Licon and the Defendant.**

At no time has the lender Fremont presented to the Defendant the opportunity to execute any new documents constituting the new Conventional Fixed Rate 30-year Note and Deed of Trust as agreed. The Defendant has stood ready to execute such documents but none have been issued. Further the defendant has taken numerous steps to resolve the issues with the note and security instrument including making consistent payments **but was frustrated at every turn by an ever changing cast of characters and entities each fraudulently attempting to assert rights that they did not possess** or could not prove with any certainty they had the right to assert.

(Emphasis added; citations omitted). Ms. Mitchell further stated that the order to docket did not contain true and accurate copies of the note and deed of trust because those documents had been voided. Ms. Mitchell supported her allegations with exhibits, attaching the deed of trust and note with "VOID" marks and the deed of trust and note without the "VOID" marks (filed with the order to docket) to her motion. Construing this pleading liberally,[12] we determine that Ms. Mitchell has pleaded with particularity the elements of forgery and that her motion, "states on its face a valid defense to the validity of the lien instrument[.]" *See* Maryland Rule 14-211(b). In this case, Ms. Mitchell in her motion not only asserted that the lender and its successors "fraudulently attempt[ed] to assert rights that they did not possess," but she also attached the materially altered documents that demonstrate "the fraudulent making of a false writing having apparent legal significance." *Smith v. State*, 7 Md. App. 457, 460 (1969). We conclude, therefore, that

---

[12] We observe that "we generally liberally construe pleadings filed by *pro se* litigants[.]" *Simms v. Shearin*, 221 Md. App. 460, 480 (2015).

the circuit court erred in denying Ms. Mitchell's motion to stay the sale and dismiss the

foreclosure action without a hearing. [13]

                                               **JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

                                               **COSTS TO BE PAID BY APPELLEES.**

---

[13] We do not fault the circuit court because the significance of the alterations in the documents is not immediately obvious. Only when the documents are placed next to each other and compared can one observe how the material alterations unfold like a Magic Eye stereogram.

19

**VOID**

Return To:
FREMONT INVESTMENT & LOAN
P.O. BOX 34078
FULLERTON, CA 92834-34078

SANDLER TITLE & ESCROW, LLC
8201 CORPORATE DRIVE
SUITE 1120
LANDOVER, MD 20785
TEL (301) 429-0022
FAX (301) 429-0285

Prepared By:
BARBARA LICON

05-1492

6000165466

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST
MIN 1001944-6000165466-4

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **July 11, 2005** together with all Riders to this document.
(B) "Borrower" is **RENE MITCHELL, SOLE OWNER**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is **FREMONT INVESTMENT & LOAN**

Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**

MARYLAND-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3021 1/01

(VMP)-6A(MD) (0005)

Page 1 of 15          Initials:

VMP MORTGAGE FORMS - (800)521-7291

REDACTED

22518   007

PRINCE GEORGE'S COUNTY CIRCUIT COURT (Land Records) REP 22518. p. 0007, MSA_CE64_22599. Date available 08/10/2005. Printed 08/20/2015.

Return To:
FREMONT INVESTMENT & LOAN
P.O. BOX 34078
FULLERTON, CA 92834-34078

Prepared By:
BARBARA LICON

SANDLER TITLE & ESCROW, LLC
8201 CORPORATE DRIVE
SUITE 1120
LANDOVER, MD 20785
TEL (301) 429-0022
FAX (301) 429-0285

————————— |Space Above This Line For Recording Data| —————————

# DEED OF TRUST
MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **July 11, 2005**           ,
together with all Riders to this document.
(B) "Borrower" is **RENE MITCHELL, SOLE OWNER**

```
IMP FD SURE $        20.00
RECORDING FEE        20.00
TOTAL                40.00
Res# PG13    Rcpt # 82724
REP   RLH     Blk # 6944
Jul 15, 2005        12:38 PM
```

Borrower is the trustor under this Security Instrument.
(C) "Lender" is **FREMONT INVESTMENT & LOAN**

Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**

MARYLAND-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3021 1/01

VMP-6A(MD) (0005)

Page 1 of 15          Initials:

VMP MORTGAGE FORMS - (800)521-7291

PRINCE GEORGE'S COUNTY, MD
APPROVED BY
#00R         JUL 14 2005

$ ___ RECORDATION TAX PAID
$ ___ TRANSFER TAX PAID

**VOID** ~~Cancellation to~~ 7/15/05

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
#### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

July 11, 2005       BREA, CA 92821
[Date]       [City]       [State]

9003 HARNESS WAY    BOWIE, MD 20715

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    **444,728.00**    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FREMONT INVESTMENT & LOAN**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.200** %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

***SEE ADJUSTABLE RATE NOTE RIDER ATTACHED HERETO AND MADE A PART HEREOF***

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **September 1, 2005** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2727 EAST IMPERIAL HIGHWAY, BREA CA 92821**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    **2,297.76**    . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT

VMP-815N (0404)     Form 5520 3/04

VMP Mortgage Solutions (800)521-7291

Page 1 of 4

*[Handwritten notes:]* Philip Sardelis. Paula Hunes Re... Barbara Lien ... requested this copy of Voided documents with Barbara Lien signature of Void. My Realtor is present to witness. We are to come back tomorrow to execute corrected documents. I have requested Fremont provide me a letter acknowledging cancellation of this debt loan, Deed & promissory note.



# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
#### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**July 11, 2005**       **BREA, CA 92821**
[Date]                          |City|                                               |State|

**9003 HARNESS WAY    BOWIE, MD 20715**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      **444,728.00**      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **FREMONT INVESTMENT & LOAN**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.200** %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.
               **\*SEE ADJUSTABLE RATE NOTE RIDER ATTACHED HERETO AND MADE A PART HEREOF\***

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **September 1, 2005** .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **August 1, 2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2727 EAST IMPERIAL HIGHWAY, BREA CA 92821**

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $      **2,297.76**    . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

**MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT**

VMP®-815N (0404)           Form 5520 3/04
         VMP Mortgage Solutions (800)521-7291
Page 1 of 4              Initials: _____

