762 A.2d 986

Thomas G. HICKS

v.

Cindy GILBERT, et al.

No. 2841, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Nov. 30, 2000.

Scott A. Bowling (Chapman, Bowling, Scott & Hruda, on the brief), La Plata, for appellant.

Julian J. Izydore, Leonardtown, for appellees.

Argued before SONNER, BYRNES and JOHN J. BISHOP, Jr. (retired, specially assigned), JJ.

SONNER, Judge.

In this appeal, we consider the venerable doctrine of unclean hands in the context of a motion for summary judgment. The Circuit Court for St. Mary's County summarily dismissed the complaint of appellant, Thomas G. Hicks, against appellees, Cindy, Aaron, and Sara Gilbert, pursuant to *Manown v. Adams,* 89 Md.App. 503, 598 A.2d 821 (1991), *rev'd on other grounds, Adams v. Manown,* 328 Md. 463, 615 A.2d 611 (1992). Hicks appealed, and we affirm because the trial court applied the correct law to the undisputed fact of Hicks's misconduct.

We review the facts, and any reasonable inferences that can be drawn from them, in a light most favorable to Hicks. *Baltimore Gas and Elec. Co. v. Lane,* 338 Md. 34, 43, 656 A.2d 307 (1995); *Burwell v. Easton Mem'l Hosp.,* 83 Md.App. 684, 687, 577 A.2d 394 (1990) (citing *Lawless v. Merrick,* 227 Md. 65, 70, 175 A.2d 27 (1961)). Hicks and Cindy Gilbert were cohabitating for approximately twelve years. In 1989, they acquired, as joint tenants, a parcel of real property in Golden Beach, Maryland. According to Hicks, throughout the course of the relationship, he invested "funds, time and labor" into the construction of a home on the property, which became the couple's only significant asset. They resided there until their separation in 1998.

In 1991–1992, Hicks "accumulated significant financial burdens." Although creditors had not filed suit against Hicks or encumbered the property, he anticipated they might do so. He and Cindy Gilbert transferred the property to Cindy Gilbert and her parents, Sara and Aaron Gilbert. As Hicks explained in paragraph 13 of his trial complaint, "[t]hat ... transfer was made to avoid any attachment of the property for the debts of [Hicks] which had not been reduced to judgment." Hicks claims, but appellees deny, that the Gilberts did not give consideration for the property or pay transfer taxes. He also claims, and the appellees also deny, that the parties orally agreed to compensate Hicks for his contributions and investments in the property in the event it was sold.

After the transfer, Hicks restructured his debts and satisfied his creditors so that he did not need to file bankruptcy and was not sued for debt collection. He continued to live with Cindy Gilbert and pay expenses for the property until 1998, when the relationship ended. Hicks then approached Cindy Gilbert for reimbursement of his contributions to the property. She refused. On March 31, 1999, Cindy Gilbert and her parents transferred the property to Michael Gilbert, Cindy's brother, for $50,000.

In August 1999, Hicks filed a complaint[1] against the Gilberts for (1) unjust enrichment; (2) promissory estoppel; (3) notice of lis pendens; and (4) "complaint to set aside real estate conveyance." He sought imposition of a constructive trust on the property, compensatory damages in the amount of $150,000, invalidation of the conveyance to Michael Gilbert, and imposition of a lien upon the property in the amount of the judgment. The Gilberts denied the allegations in Hicks's complaint regarding his contributions and interests in the property. They admitted the allegation in paragraph 13, however, that Hicks transferred the property to protect it from creditors.

The Gilberts moved for summary judgment on the grounds that the parties agreed to the material fact of the furtive motive behind the conveyance and that the unclean hands doctrine, as examined in *Manown*, precluded him from seeking redress for any matter related to the misconduct. In his initial response to the summary judgment motion, Hicks emphasized that when the property was conveyed, it was not the subject of any debt proceeding. He suggested the conveyance could have been completed for estate planning or to consolidate assets in anticipation of the financial burdens of litigation. The wording of paragraph 13, in his view, did not trigger, necessarily, the unclean hands doctrine.

---

1. Hicks actually filed three versions of the complaint. We refer to the Amended Complaint filed on August 27, 1999.

In a supplemental response, filed two weeks later, however, Hicks adopted a new strategy. Citing *Sherwood Company v. Sherwood Distilling Company,* 177 Md. 455, 9 A.2d 842 (1939), he urged the unclean hands doctrine did not apply because he paid his creditors. He stated:

In the present case, as in *Sherwood Co.,* the Plaintiff has purged the alleged fraudulent conveyance of his property, *made with the admitted intent to hinder his creditors,* by paying all of his creditors. By paying his creditors, the plaintiff has corrected and made restitution for his wrongful act. Under these circumstances, he is not barred by unclean hands from seeking relief in this case.

(Emphasis added.) Thus, Hicks turned from hypothetical readings of paragraph 13 to a straight forward admission of wrongdoing. He attempted to shift the court's focus from the impropriety to what he did following the impropriety.[2]

The court convened a hearing on December 27, 1999, where the following interchange transpired between the court and Hicks's attorney:

[THE COURT]: Are you saying the facts, if this went to trial, would show that his intent for this transfer of this deed to this girlfriend and her parents was not to prevent legitimate business people, friends, neighbors, relatives from collecting monies that he owed them, because he had gotten rid of the asset?

Are you telling me the facts are going to show something different than what he is basically saying here?

\* \* \*

[HICKS'S ATTORNEY]: I can't show—I am not about to stand before the Court, after practicing for 12 years, and

---

2. The language quoted from the supplemental motion also suggests that the court consider the negligible effect of the wrongdoing, the argument being that Hicks's misconduct should not bar his suit since it caused no harm to his creditors. As discussed below, however, the unclean hands doctrine protects the judicial process, not people. *See Schneider v. Schneider,* 96 Md.App. 296, 312, 624 A.2d 1319 (1993), *rev'd on other grounds,* 335 Md. 500, 644 A.2d 510 (1994). The misconduct's effect on parties or interested persons is therefore irrelevant.

tell the Court that my allegations in the complaint are going to be any different than what they say.

\* \* \*

Truthfully he says I have got financial burdens, which are debts. No one is suing me. No one is attaching anything. I am going to set it away from their reach for now until I resolve the problem.

Following the hearing and review of the pleadings, the court issued an opinion and order on January 13, 2000, granting summary judgment in favor of the Gilberts.

■ Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(a) (2000). The trial court does not make findings of fact, but determines only whether a real factual dispute exists. *Brown v. Dermer*, 357 Md. 344, 354–55, 744 A.2d 47 (2000) (citations omitted); *Commercial Union Ins. Co. v. Harleysville Mutual Ins. Co.*, 110 Md.App. 45, 51, 675 A.2d 1059 (1996). We review whether the grant of summary judgment was "legally correct." *Brown*, 357 Md. at 355, 744 A.2d 47; *Joswick v. Chesapeake Mobile Homes, Inc.*, 130 Md.App. 493, 498, 747 A.2d 214 (2000) (quoting *Harleysville*, 110 Md.App. at 51, 675 A.2d 1059).

■ Hicks's reason for transferring the property to the Gilberts was, for purposes of the summary judgment motion, the material fact in this case. The trial court found that fact revealed and undisputed in paragraph 13 of the complaint, where Hicks stated the purpose of the conveyance was "to avoid any attachment of the property for the debts of the Plaintiff which had not been reduced to judgment." The court did not make that factual finding; Hicks clearly averred it, and the Gilberts clearly admitted it. Indeed, he asserted that fact again in his supplemental response in opposition to the Gilbert's motion for summary judgment, in which he "admitted [the] intent [of the transfer was] to hinder his creditors," and at the hearing on the summary judgment motion.

■ Even though Hicks admitted the purpose behind the transfer, he cites *DiGrazia v. County Executive for Montgomery County,* 288 Md. 437, 418 A.2d 1191 (1980), for the proposition that summary judgment is inappropriate when there is a question of motive or intent. A more complete recitation of that proposition, however, is that "summary judgment generally is inappropriate when matters—such as knowledge, intent or motive—that ordinarily are reserved for resolution by the fact-finder are essential elements of the plaintiff's case or the defense." *Brown,* 357 Md. at 355, 744 A.2d 47; *see also Clea v. Mayor & City Council of Baltimore,* 312 Md. 662, 677, 541 A.2d 1303 (1988). Hicks's misconduct was not an essential element of the four causes of action enumerated in his complaint, although it was basic to the Gilberts' defense of unclean hands. "While the unclean hands doctrine may involve factual questions, [however], it is the [court that] must determine when the doctrine should be invoked to bar a claim." *Manown,* 89 Md.App. at 513, 598 A.2d 821. Thus, Hicks's reason for the conveyance was not the· kind of question "reserved for resolution by the fact-finder," and therefore inappropriate for resolution by summary judgment. *Brown,* 357 Md. at 355, 744 A.2d 47.

■ We now turn to the question of whether the Gilberts were entitled to judgment as a matter of law. The unclean hands doctrine "refuses recognition and relief from the court to those guilty of unlawful or inequitable conduct pertaining to the matter in which relief is sought." *Manown,* 89 Md.App. at 511, 598 A.2d 821. It is "not applied for the protection of the parties nor as a punishment to the wrongdoer." *Adams v. Manown,* 328 Md. 463, 474–75, 615 A.2d 611 (1992). Rather, it protects the integrity of the court and the judicial process by denying relief to those persons "whose very presence before a court is the result of some fraud or inequity." *Manown,* 89 Md.App. at 511, 598 A.2d 821; *see also Niner v. Hanson,* 217 Md. 298, 309, 142 A.2d 798 (1958).

■ There must be a nexus between the misconduct and the transaction, because "[w]hat is material is not that the

plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts." *Adams,* 328 Md. at 476, 615 A.2d 611 (citing D. Dobbs, *Remedies* § 2.4 at 46 (1973)); *see also Schneider v. Schneider,* 96 Md.App. 296, 306, 624 A.2d 1319 (1993) ("It is only when the plaintiff's improper conduct is *the source, or part of the source,* of his equitable claim, that he is to be barred because of this conduct."). Since "the doctrine is not one of absolutes," we disturb a trial court's decision to invoke the doctrine only when the court abuses its discretion. *Manown,* 89 Md.App. at 511, 598 A.2d 821.

■ Hicks does not challenge the nexus between the misconduct and the relief he sought by his complaint. Instead, he distinguishes *Manown* from the circumstances of this case and criticizes the trial court for "reviewing *Manown* in isolation" of earlier precedent. The plaintiff in *Manown* was involved in an extramarital relationship while he was separated from his wife. During the course of the relationship, he transferred assets to his girlfriend, with whom he shared a home and a business. He did not disclose these assets to his wife in the divorce action that ensued, nor did he disclose the assets to the bankruptcy court when he filed for bankruptcy soon after the divorce. The relationship ended, and the plaintiff sued his former girlfriend to recover the funds he had transferred to her. The girlfriend moved for summary judgment based on the unclean hands doctrine. The trial court denied the motion, but we reversed. The Court of Appeals then affirmed our analysis of the unclean hands doctrine, but reversed on the ground that the real party in interest was not joined in the suit.

Hicks distinguishes *Manown* because the plaintiff in that case "actually filed bankruptcy to avoid his debts and creditors" and the "evidence that the Plaintiff acted in a fraudulent manner seemed overwhelming because clearly he was under no illusion as to the nature of his conduct." Essentially, Hicks argues that his conduct was not as bad or as blatant as the plaintiff's conduct in *Manown.* To his credit, that appears to

be true, but the trial judge was still entitled to find Hicks's behavior bad enough to invoke the unclean hands doctrine.

As he did before the trial court, Hicks also refers us to *Sherwood Company v. Sherwood Distilling Company,* 177 Md. 455, 9 A.2d 842 (1939). That case involved a trademark dispute. The defendant attempted to bar plaintiff's claim because plaintiff's whiskey products bore a misleading label for a period of time. Following a change in the law, however, plaintiff promptly modified the label. The Court of Appeals declined to invoke the unclean hands maxim since plaintiff purged the impropriety. The maxim

> has nothing to do with retribution or punishment, or with disapproval of the character or past behavior of the applicant, but only with the effect of his present application. Consequently, when there has been a question of the propriety of conduct of an applicant in the past, but the applicant has corrected any alleged mistake and complied with the suggestions of the Court, his impropriety should be considered as closed and should not debar him from relief.

*Id.* at 465, 9 A.2d 842; *see also Niner v. Hanson,* 217 Md. 298, 309, 142 A.2d 798 (1958) ("Hence an impropriety that has been purged is not a bar."). *Sherwood* merely confirms the central purpose of the unclean hands doctrine; we are not concerned with the party's impropriety, but with cloaking that misconduct in legitimacy. Where the impropriety has been corrected, or where it is unrelated to the claim before the court, we can rest assured that judicial resources will not be exerted to perpetuate fraud or inequity.

In this case, the conveyance formed the basis of Hicks's claim. If the court allowed the claim to go forward, it would hear testimony about the conveyance and could easily become embroiled in the sordid details of the furtive plan. Thus, even if Hicks ultimately paid his creditors, without the major asset of the home, the "effect of his present application," *Sherwood,* 177 Md. at 465, 9 A.2d 842, was to entangle the court in impropriety.

**JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.**