**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1411**

UNITED BANK, a Virginia Corporation, Successor-in-Interest to Virginia
Commerce Bank,

        Plaintiff – Appellant,

    v.

RICHARD BUCKINGHAM, solely in his capacity as personal representative of
the Estate of John D. Buckingham, Sr.; SUSAN BUCKINGHAM, individually,
and in her capacities as co-personal representative of the Estate of John D.
Buckingham, Sr., and Trustee of the Cardinal Trust; DAVID T. BUCKINGHAM,
individually and in his capacities as Trustee for the John D. Buckingham Life
Insurance Trust, Osprey Trust and Trustee for the Blue Heron Trust,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Roger W. Titus, Senior District Judge.  (8:13-cv-03227-RWT)

Argued:  December 12, 2018                 Decided:  February 21, 2019

Before KING, KEENAN, and QUATTLEBAUM, Circuit Judges.

Affirmed in part, reversed in part and remanded by unpublished opinion. Judge
Quattlebaum wrote the opinion, in which Judge King and Judge Keenan joined.

**ARGUED:** James Robert Schroll, BEAN, KINNEY & KORMAN, PC, Arlington,
Virginia, for Appellant. Charles R. Claxton, PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG, EIG & COOPER, CHTD., Bethesda, Maryland, for Appellees. **ON**

**BRIEF:** William F. Krebs, BEAN, KINNEY & KORMAN, PC, Arlington, Virginia, for Appellant. D. Jack Blum, PALEY, ROTHMAN, GOLDSTEIN, ROSENBERG, EIG & COOPER, CHTD., Bethesda, Maryland; Kenneth R. West, ABRAMS & WEST, P.C., Bethesda, Maryland; Kenneth S. Nankin, NANKIN & VERMA PLLC, Bethesda, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

This case involves competing claims to the proceeds of life insurance policies. Two parties claim the proceeds of the policies, United Bank and the Buckingham family. The district court granted summary judgment in favor of the Buckingham family and against United Bank. In granting summary judgment in favor of the Buckinghams, the district court held that the doctrine of unclean hands barred United Bank's claims. As an alternative holding, the district court concluded that even if the unclean hands doctrine was inapplicable, summary judgment in favor of the Buckinghams was appropriate because United Bank's claims failed under applicable law, including the Maryland Uniform Fraudulent Conveyance Act ("MUFCA").

For the reasons described below, we reverse the district court's holding regarding unclean hands, finding that the court applied the doctrine too broadly in barring United Bank's claims as an unsecured creditor. With respect to the district court's alternative holding, we reverse the district court on the fraudulent conveyance count related to the conveyance of the ownership and beneficiary interest in the John Hancock policies and remand the remaining fraudulent conveyance and transfer counts for further consideration of applicable Maryland law, including Md. Code Ann., Est. & Trusts § 15-102 and Md. Code Ann., Ins. § 16-111.

I.

A.

The origins of this dispute can be traced back to the financial relationship between the Buckingham family, Sun Control Systems, Inc. ("SCS"), and Virginia Commerce

bank ("VCB")[1]. Over the years, VCB loaned John D. Buckingham, Sr., a successful Maryland businessman, millions of dollars for personal use and for business use by his company, SCS.[2] Although this relationship was mutually beneficial for years, it deteriorated in the 2000s, as SCS experienced serious financial reversals. SCS's revenues dropped from $15,500,000 in 2008 to $8,500,000 in 2009.

By 2009, the SCS and Buckingham loans were in default, and SCS's bank accounts at VCB were overdrawn. In an attempt to address these delinquencies, VCB and SCS entered into a forbearance agreement in May 2009. In that agreement, the parties acknowledged the outstanding unpaid balances on the SCS and Buckingham loans, and VCB agreed to increase SCS's line of credit by an additional $750,000. VCB also agreed to refrain from pursuing collection and enforcement actions on the defaulted loans as long as SCS complied with the terms of the forbearance agreement.

Despite the benefits provided to SCS by the forbearance agreement, SCS's financial position continued to decline in 2010. SCS's projected revenue for 2010 was less than $7,500,000, representing an approximately 50% decline from previous years. As of February 2010, SCS was in default under the forbearance agreement and was still not current with its loan obligations. During this time, life insurance policies in Mr. Buckingham's name were some of the company's only valuable assets.

---

[1] On January 31, 2014, United Bank acquired VCB. United Bank brought the present suit as successor-in-interest to VCB.

[2] VCB alleges that its total loss on the loans, including crude interest, fees and other costs, is more than $8 million.

4

Eight of those life insurance policies are at issue in this litigation. The eight policies can be divided into three groups: (1) the John D. Buckingham policies (the "JDB policies"); (2) the Northwestern Split Dollar policies; and (3) the John Hancock policies.[3]

The JDB policies consist of two policies directly purchased by Mr. Buckingham from Northwestern Mutual. Mr. Buckingham paid the premiums on the policies and designated the beneficiaries of the policies himself.

The Northwestern Split Dollar policies consist of four policies purchased by SCS from Northwestern Mutual as an employee benefit for Mr. Buckingham. SCS paid the premiums on these policies, and Mr. Buckingham designated the beneficiaries. Upon Mr. Buckingham's death, SCS would recover the amount of premiums paid, and Mr. Buckingham's designated beneficiary would receive the remainder of the policy.

The John Hancock policies consist of two policies purchased by SCS from John Hancock Life Insurance Company. Like the Northwestern Split Dollar policies, SCS paid the policy premiums on Mr. Buckingham's behalf, and Mr. Buckingham designated the beneficiaries. Also like the Northwestern Split Dollar policies, SCS was able to recover premiums paid from the policies' death benefits.

Likely in order to convince VCB to continue to refrain from enforcing its creditor rights and to give SCS more opportunity to turn around its financial condition, VCB and SCS entered into a Second Amendment to the First Forbearance Agreement ("Second

---

[3] Although portions of the record contain contradictory information about the specific policies at issue, it appears that these broad categories are correct. *See* J.A. 371-72. *Cf.* J.A. 225-26.

Amendment") on June 16, 2010. The Second Amendment granted VCB a perfected security interest in several life insurance policies, including the JDB policies and the Northwestern Split Dollar policies.

Despite the Second Amendment, SCS's financial decline continued through the rest of 2010 and into 2011. On December 13, 2010, SCS filed for bankruptcy reorganization.[4] Throughout 2011, the company remained in default to VCB. During this time, SCS and the Buckinghams continued to owe VCB millions of dollars. By October 2011, SCS moved offices and appeared to have stopped doing active business.

Tragically, SCS's financial decline paralleled the decline of Mr. Buckingham's physical health. From 2009 to 2010, Mr. Buckingham was treated at Johns Hopkins Medical Center for a terminal neurological condition called frontotemporal dementia.

In 2011, David Buckingham was appointed guardian of his father's property and co-guardian, with Mr. Buckingham's wife, of Mr. Buckingham's person.

B.

At the time of Mr. Buckingham's death in October 2012, both VCB and the Buckingham family claimed a right to the proceeds of the life insurance policies. VCB based its claim to the proceeds on its status as a creditor of SCS and Mr. Buckingham's estate. Through the Second Amendment, VCB asserted rights as a secured creditor in the JDB policies and the Northwestern Split Dollar policies. Through the loan obligations that pre-dated the Second Amendment, VCB also asserts rights as an unsecured creditor.

---

[4] It appears that the SCS bankruptcy was terminated sometime in 2011.

The Buckingham family claimed a right to the proceeds of these policies through recently created family trusts, which had been designated as the beneficiaries of the life insurance policies. David Buckingham, acting as his father's guardian, undertook multiple actions in 2011 and 2012 to bolster these claims.

In 2011, asserting his power as guardian, David Buckingham created the John D. Buckingham Life Insurance Trust ("JDB Trust") to provide for his mother's care. Once the trust was created, again asserting his power as guardian, David Buckingham exercised his father's rights to change the beneficiaries of the policies, naming the trust the beneficiaries on the policies.

Also in 2011, David Buckingham orchestrated the sale of the John Hancock policies from SCS to another newly created trust, the Osprey Trust. Yet again asserting his authority as guardian, David Buckingham voted on behalf of his father to sell the policies to the trust for $110,000. Immediately after the sale, David Buckingham sought and received accelerated death benefits on the policy, totaling approximately $750,000. After his mother's unexpected death in 2012, David Buckingham created the Blue Heron Trust and again acting as guardian, named the newly created trust the beneficiary of the JDB and Northwestern Split Dollar policies. The effect of these actions was to remove the proceeds of the life insurance policies from the reach of SCS's creditors, including VCB.

## C.

In May 2012, David Buckingham and two of his siblings filed suit in the Circuit Court for Montgomery County, Maryland, seeking to invalidate the Second Amendment

7

and the assignments of certain insurance policies to VCB. The Buckingham children alleged that Mr. Buckingham was incompetent at the time he executed the Second Amendment, rendering it void. VCB asserted various counterclaims, seeking declarations that the Second Amendment and assignment of certain insurance policies were valid.

The Maryland court declared that the Second Amendment was null and void in December 2013. As part of its holding, the court declared that Mr. Buckingham was suffering from advanced dementia and was incompetent when he signed the Second Amendment. The court declared that VCB had knowledge of Mr. Buckingham's incapacity prior to the execution of the Second Amendment.

D.

Prior to the state court ruling, VCB filed this suit in federal court in October 2013, alleging that David Buckingham's actions related to the John Hancock policies and his actions changing the beneficiaries of the life insurance policies constituted fraudulent conveyances and transfers under Maryland law. In doing so, VCB asserted rights as a creditor of Mr. Buckingham, Mr. Buckingham's wife and SCS.

On August 18, 2017, United Bank, as Successor-in-Interest to VCB, filed a Second Amended Complaint ("SAC") against David T. Buckingham, individually and in his capacities as Trustee for the John D. Buckingham Life Insurance Trust, the Osprey Trust, and the Blue Heron Trust; Susan Buckingham, individually and as co-personal representative of the Estate of John D. Buckingham, Sr. and as Trustee of the Cardinal Trust; and Richard Buckingham, in his capacity as co-personal representative of the Estate of John D. Buckingham, Sr. The SAC alleged that David Buckingham's actions

8

related to the John Hancock policies and his actions changing the beneficiaries of the life insurance policies constituted fraudulent conveyances and transfers under Maryland law. The SAC further alleged that these actions constituted improper self-dealing. Finally, the SAC also sought a declaration invalidating other actions taken by David Buckingham as guardian, including his actions creating the JDB Trust, the Blue Heron Trust and the Osprey Trust and his actions related to the sale of the John Hancock policies.[5]

On July 31, 2017, and September 8, 2017, Defendants David and Susan Buckingham filed motions for summary judgment. On September 29, 2017, Plaintiff United Bank filed its own motion for summary judgment.

On November 27, 2017, the district court held a hearing on all pending motions. During the hearing, United Bank and the Buckinghams addressed the applicability of the unclean hands doctrine, the scope of MUFCA and whether it extends to a change in the designation of a life insurance beneficiary and the extent of David Buckingham's power as guardian of Mr. Buckingham. Regarding the applicability of MUFCA, United Bank argued that Maryland insurance law, specifically Md. Code Ann., Ins. § 16-111, suggests that the Maryland legislature recognized that an "intentional change of beneficiary can support a fraudulent conveyance action." J.A. 984.

---

[5] The Second Amended Complaint alleged eight causes of action: 1) fraudulent conveyance of SCS's ownership and beneficiary interest in the John Hancock policies; 2) fraudulent conveyance – John Hancock advance payments applied against the death benefit; 3) fraudulent conveyance – excess benefit of the John Hancock policies; 4) fraudulent transfer – Northwestern split dollar policies; 5) fraudulent transfer – Northwestern JDB policies; 6) self-dealing – all policies; 7) declaratory judgment – all policies; 8) declaratory judgment – John Hancock policies.

On March 13, 2018, the district court granted the Buckingham children's motions for summary judgment and denied United Bank's motion for summary judgment.[6] In doing so, the district court held that the unclean hands doctrine barred the plaintiff's claims and as an alternative holding, that United Bank's claims failed under applicable Maryland law.

United Bank filed a timely appeal, and we have jurisdiction over this matter pursuant to 28 U.S.C. § 1291.

II.

A.

We begin by reviewing the district court's order granting summary judgment based on the unclean hands doctrine. Although a district court's application of the unclean hands doctrine is generally reviewed for abuse of discretion, pure questions of law related to the doctrine, including the parameters of the doctrine itself, are reviewed de novo. *Bonner Farms, Ltd. v. Fritz*, 355 F. App'x 10, 17 (6th Cir. 2009) (citing *Ne. Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1354 (3d Cir. 1989)).

The district court found the doctrine applied to this case and barred the plaintiff's claims:

> This case provides a prime example of what the unclean hands doctrine is intended to prevent. United Bank is attempting to assert a right to the

---

[6] Specifically, the district court granted: David Buckingham's motion for summary judgment, Susan Buckingham's motion for summary judgment and David Buckingham and Susan Buckingham's motion for an order dismissing, or alternatively, entering summary judgment on counts VII and VIII of the SAC.

10

proceeds of the life insurance policies that it failed to secure through the now voided assignments in the Second Amendment. That failure was the result of the grossly inequitable conduct of its predecessor, VCB. This Court cannot now permit United Bank to accomplish through another route that which it tried and failed to do through unsavory means.

J.A. 1026-29.

In reaching this holding, the district court disregarded United Bank's argument that its claims as an unsecured creditor were separate from and unrelated to its claims as a secured creditor under the Second Amendment. Rejecting United Bank's argument, the district court concluded that the doctrine of unclean hands barred not only United Bank's claims as a secured creditor through the Second Amendment but also its claims as an unsecured creditor:

> The fact that United Bank is now asserting its claim to the money as an unsecured creditor (and is thus not using the rights the Second Amendment would have provided to it had it not been invalidated) does not alter the analysis . . . This Court cannot ignore VCB's previous inequitable conduct in its effort to reach the same insurance proceeds and now allow its successor by merger, United Bank, to recover as to the same subject matter in the wake of that misconduct.

J.A. 1028-29. We find that the district court misapplied the law and discounted applicable precedent in reaching this conclusion.

The purpose of the unclean hands doctrine is to "prevent the court from assisting in fraud or other inequitable conduct . . . ." *Mona v. Mona Elec. Grp., Inc.,* 176 Md. App. 672, 714, 934 A.2d 450, 474 (2007) (quoting *Turner v. Turner*, 147 Md. App. 350, 419, 809 A.2d 18, 58 (2002)) (internal quotation marks omitted). It "is available to deny relief to those guilty of unlawful or inequitable conduct with respect to the matter for which relief is sought." *Mona*, 176 Md. App. at 714, 934 A.2d at 474. To invoke the doctrine,

11

there must be a "nexus between the misconduct and the transaction because 'what is material is not that the plaintiff's hands are dirty, but that [she] dirties them in acquiring the right [she] now asserts.'" *Turner v. Turner*, 147 Md. App. 350, 420, 809 A.2d 18, 58 (2002) (quoting *Hicks v. Gilbert*, 135 Md. App. 394, 400-01, 762 A.2d 986, 990 (2000)) (alteration in original).

Significantly, the doctrine of unclean hands "has nothing to do with retribution or punishment, or with disapproval of the character or past behavior of the applicant, but only with the effect of his present application." *Hicks v. Gilbert*, 135 Md. App. 394, 402, 762 A.2d 986, 990 (2000) (quoting *Sherwood Co. v. Sherwood Distilling Co.*, 177 Md. 455, 465, 9 A.2d 842, 846 (1939)). If "there has been a question of the propriety of conduct of an applicant in the past, but the applicant has corrected any alleged mistake and complied with the suggestions of the Court, his impropriety should be considered as closed and should not debar him from relief." *Id.* (quoting *Sherwood Co. v. Sherwood Distilling Co.*, 177 Md. 455, 465, 9 A.2d 842, 846 (1939)).

In applying the doctrine, the district court attempted to directly analogize the case to *Mona v. Mona*, asserting:

> The nexus between the misconduct and the transaction in Mona was that they both concerned the amounts advanced. Here, the nexus between the misconduct and the transaction is that they both concern the proceeds of the disputed life insurance policies. In Mona, as here, the plaintiffs tried to collect the disputed money through inequitable conduct.

J.A. 1028 (internal quotation marks omitted).

In *Mona*, the Court of Special Appeals of Maryland considered the applicability of the unclean hands doctrine to a plaintiff's claim for unjust enrichment. *Mona*, 176 Md.

12

App. at 712-722, 934 A.2d at 473-79. In considering the applicability of the doctrine, the court noted that the plaintiff's claim for unjust enrichment was inconsistent with his prior actions, specifically his representations to the defendant and to the IRS:

> His theory of recovery for unjust enrichment vis-à-vis the Mona Energy advances was that he did not have any personal obligation for them, and therefore the company acted improperly by deducting them from his dividend share. He already had represented to the same company and to the IRS, however, that he was responsible for paying the Mona Energy advances, and had taken a tax write-off for the advances.

*Id*. at 719, 934 A.2d at 477. The *Mona* court ultimately found there to be a sufficient nexus between the plaintiff's unjust enrichment claim and his prior contrary representations to the defendant and affirmed the trial court's finding of unclean hands. *Id*. at 720-22, 934 A.2d at 478-79.

Here, the district court's reliance on *Mona* is misplaced for at least two reasons. First, the court in *Mona* concluded that it would be assisting or condoning the plaintiff's inequitable conduct if the plaintiff's claim could proceed. Specifically, it held "the court would be assisting or condoning inequitable and perhaps unlawful conduct by Mark in permitting him to seek and obtain the return of the Mona Energy deductions." *Id*. at 720, 934 A.2d at 478. Crucially, under either outcome of the case, the *Mona* court concluded that it would be assisting in or condoning the plaintiff's wrongful conduct if the claim proceeded. In reaching this conclusion, the *Mona* court noted:

> If, as the jury implicitly found, Mark did not guarantee the Mona Energy advances, he nevertheless acted inequitably (if not unlawfully) in making the precise contrary representation to the MEG board, and ultimately to the IRS, for his own personal tax benefit. And if, as the jury did not find, Mark did guarantee the Mona Energy advances, as he stated in the tax basis letter, then he would have been acting inequitably in seeking their return.

13

*Id*. at 719-20, 934 A.2d at 477-78.

In contrast to *Mona*, the district court here, by allowing United Bank to proceed against the policies as an unsecured creditor, would not be assisting or condoning any prior inequitable conduct by United Bank. Instead, it would merely be allowing United Bank's separate and distinct claim as an unsecured creditor of SCS and the Buckingham estate to proceed.

Second, the *Mona* court's conclusion that the nexus requirement was satisfied in that case does not support a similar conclusion in this case. In finding the nexus requirement satisfied, the *Mona* court concluded that, like in *Turner v. Turner*, the plaintiff's wrongful conduct "was with respect to the same matter for which [he] was seeking relief." *Id.* at 720-21, 934 A.2d at 478. According to the *Mona* court, both the prior conduct and the present relief concerned "the Mona Energy advances, and more specifically, [the plaintiff's] status as a guarantor *vel non* of advances made by MEG to Mona Energy." *Id*. at 720, 934 A.2d at 478.

In reaching that conclusion, the *Mona* court relied heavily on *Turner,* a decision which the district court in this case largely discounted. *Id*. at 720-21, 934 A.2d at 478. In *Turner*, the Court of Special Appeals of Maryland considered the applicability of the doctrine of unclean hands to a wife's request for an accounting against her former husband. *Turner*, 147 Md. App. at 414-420, 809 A.2d at 55-58. In weighing the applicability of the doctrine, the court concluded that there was a sufficient nexus between the wife's misconduct and her accounting claim. *Id*. at 420, 809 A.2d at 58. The

14

court explained "[a]ppellant previously aided her husband in diverting funds from BSL. Although the idea may have originated with the appellee, and Ms. Turner's participation in the illegal conduct ended about a year before Mr. Turner resumed the practice, appellant was a willing participant at the outset." *Id*. at 420, 809 A.2d at 58. In those circumstances, the wife's hands were unquestionably dirtied in acquiring the rights she asserted in court. *Id*. at 420, 809 A.2d at 58.

In contrast to both *Mona* and *Turner*, the nexus requirement is not satisfied in this case. Unlike in *Mona*, the prior conduct and present relief in this case concern separate subject matters. While VCB's prior conduct did relate to the life insurance policies generally, it more specifically concerned VCB's status as a secured creditor. Here, the request for relief of United Bank (as VCB's successor-in-interest) concerns its status as an unsecured creditor, a right it acquired well before and separately and independently from VCB's conduct that constituted unclean hands. Unlike in *Turner*, United Bank did not dirty its hands in acquiring this right. *Turner*, 147 Md. App. at 420, 809 A.2d at 58. Consequently, any "impropriety" associated with the Second Amendment "should be considered as closed and should not debar" United Bank from relief. *Hicks*, 135 Md. App. at 402, 762 A.2d at 990 (quoting *Sherwood*, 177 Md. at 465, 9 A.2d at 842). Because the district court applied the unclean hands doctrine too broadly, we reverse the district court's holding that the unclean hands doctrine barred all of plaintiff's claims.

B.

As an alternative holding to its unclean hands holding, the district court held that, as a matter of law, the Buckingham children would prevail with respect to all eight counts

15

under applicable law. Although we affirm the district court's holdings with respect to Counts VI, VII, and VIII, we reverse the district court holding with respect to Count I.[7] We also remand Counts II through V to the district court for further consideration of applicable Maryland law.

1.

A district court's grant of summary judgment is reviewed de novo, applying the same legal standards as the district court. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Summary judgment is only appropriate if there is no genuine issue of material fact. *Id.* In considering whether a genuine issue of material fact exists, the facts must be viewed in the light most favorable to the non-moving party. *Id.*

Addressing Count I of the SAC, the district court held that the conveyance of the Hancock policies did not amount to a fraudulent conveyance. In doing so, the district court concluded that the Osprey Trust paid SCS fair consideration for the John Hancock

---

[7] With respect to Count VI, we find that Appellant has waived appellate review of its self dealing claim by failing to raise the issue in its opening brief. *United States v. Winfield*, 665 F.3d 107, 111 n.4 (4th Cir. 2012); *Billingslea v. Astrue*, 502 F. App'x 300, 301 n.1 (4th Cir. 2012).

With respect to Count VII and VIII, we affirm the district court's grant of summary judgment on United Bank's declaratory judgment claims. It is well settled that a declaratory judgment action is a procedural remedy and does not create substantive rights. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014). United Bank has failed to show that it is entitled to substantive relief with respect to David Buckingham's actions as guardian beyond any relief implicated by its MUFCA claims. Consequently, the separate declaratory judgment claims must fail.

policies. United Bank claims the court erred in granting summary judgment on this issue. Therefore, the question for us to consider is whether, viewing the facts in the light most favorable to United Bank, there was a genuine issue of material fact concerning the fairness of the consideration paid by Osprey Trust for the Hancock policies.

From our review of the record, United Bank offered evidence in support of its position concerning the lack of fair consideration raising a genuine issue of material fact at the summary judgment stage. The district court itself recognized evidence offered by United Bank in support of its position that Osprey's payment of $110,000 was not fair consideration. The district court noted "[i]n support [United Bank] provides a letter to David from John Hancock explaining the amount of a reduced death benefit of the two policies, which comes out to be about $709,000." J.A. 1031. United Bank also pointed to the fact that the policies were cashed in by David Buckingham on behalf of the Osprey Trust for $750,000 soon after the sale as evidence that the policies' sales were not supported by fair consideration.

The record also shows that the Buckingham children offered competing evidence that the sale of the John Hancock policies was supported by fair consideration. In describing the Buckingham children's evidence and arguments, the district court noted:

> David asserts that the $110,000 price paid for the policies to SCS was fair consideration because the 'policies had long overdue premiums, negative surrender value, and were in danger of lapsing and becoming worthless.' . . . Additionally, David argues, because it was difficult for all the parties to determine the policies' fair market value, it was reasonable to adopt the calculation done by John Hancock, a neutral third party, based on an IRS-approved formula . . . ."

J.A. 1030-31.

17

Rather than conclude that this competing evidence created a genuine issue of material fact or explain that, despite this competing evidence, there was no genuine issue of material fact, the district court simply held that $110,000 was a "fair equivalent" for the policies. J.A. 1031 The court held:

> There is no dispositive authority as to how fair consideration is determined under specific circumstances. Therefore, under the circumstances here–SCS had not been paying the policies' premiums, SCS was insolvent, and the policies had a cash surrender value of $0.00–the Court agrees with Defendants' analysis and finds that the $110,000 was a 'fair equivalent' for the John Hancock policies.

J.A. 1031. In reaching this holding, the district court improperly weighed the evidence presented by both parties. At the summary judgment stage, where a court is instructed to view facts in the light most favorable to the non-moving party, this was error. Consequently, we reverse the district court with respect to Count I. [8]

2.

Addressing Counts II through V, the district court concluded that a change of the designated beneficiary of a life insurance policy did not constitute a conveyance under MUFCA. Specifically, the court held:

> Although the Court of Appeals of Maryland has not yet weighed in on this specific issue, the state's precedent and its sister courts' influence strongly cut in favor of extending the courts' treatment of the right to a life insurance benefit as a mere expectancy, and not a property interest, to the context of the MUFCA.

---

[8] In reaching this conclusion, we express no opinion about which party has the better end of the argument on this issue. We merely conclude that there is evidence on both sides and, in that situation, summary judgment is not appropriate.

18

J.A. 1036.

In granting summary judgment in favor of the Buckingham children on Counts II through V, the district court failed to fully consider applicable Maryland law relevant to the fraudulent conveyance and transfer issues. Specifically, it failed to consider applicable Maryland estate and trust law and potentially applicable Maryland insurance law.

First, the district court failed to engage in any analysis regarding the scope of David Buckingham's power as guardian of his father's property under Maryland estate and trust law. Instead, the district court simply assumed that David Buckingham had proper authority as guardian to make beneficiary designation changes to the life insurance policies. J.A. 1034-35 ("Assuming that David had proper authority to make the beneficiary designation changes and SCS would have been the proper beneficiary at the time of John's death, United Bank's argument falls flat.").

Without deciding the issue, we conclude that the district court erred in failing to consider the scope of David Buckingham's powers as guardian under Maryland law. On appeal, United Bank points to Md. Code Ann., Est. & Trusts § 15-102 as relevant to the issue of a guardian's power to change the beneficiaries of life insurance policies. Section 15-102 defines the powers and duties of a fiduciary under Maryland law. Md. Code Ann., Est. & Trusts § 15-102. Subsection (t) of § 15-102 provides the following with respect to a fiduciary's power to exercise certain options, including options, rights and privileges contained in a life insurance policy:

19

He may exercise options, rights and privileges contained in a life insurance policy, annuity, or endowment contract constituting property of the fiduciary estate, including the right to obtain the cash surrender value, convert a policy to another type of policy, revoke any mode of settlement, and pay any part or all of the premiums on the policy or contract.

Md. Code Ann., Est. & Trusts § 15-102. On remand, the district court should address this statute generally and subsection (t) of the statute specifically to analyze whether David Buckingham's power as guardian included the power to change beneficiaries of life insurance policies under Maryland law.

Second, the district court's analysis of these counts failed to consider the interplay between Maryland insurance law and Maryland trusts and estates law in concluding that a beneficiary designation change cannot constitute a fraudulent conveyance under MUFCA. Md. Code Ann., Ins. § 16-111(d) provides: "A change of beneficiary, assignment, or other transfer is valid except for transfer with actual intent to hinder, delay, or defraud creditors." Md. Code Ann., Ins. § 16-111. The district court erred in failing to consider the effect of this statute. Without deciding the issue, the district court on remand should consider the effect, if any, of Md. Code Ann., Ins. § 16-111(d) on United Bank's claims.

III.

In conclusion, we hold that the district court applied the doctrine of unclean hands too broadly, and we reverse accordingly.

With respect to the district court's alternative holding, we affirm the grant of summary judgment with respect to Counts VI, VII and VIII, reverse the grant of

20

summary judgment with respect to Count I and remand Counts II through V to the district court for further consideration of relevant Maryland law as set forth above.

The judgment of the district court is

*AFFIRMED IN PART, REVERSED IN PART AND REMANDED.*